TERRENCE D. PIERSON MULLER II, demandante y recurrido, *v.* JOSÉ ROBERTO FEIJOÓ, DIRECTOR OFICINA CENTRAL DE ADMINISTRACIÓN DE PERSONAL, demandado y peticionario.

*Número:* O-78-379     *Resuelto:* 29 de diciembre de 1978

*José Ramón Pérez Hernández,* abogado del peticionario; *Julio Maymí Pagán* y *Carmelo Guzmán Géigel,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En *Pierson Muller I* v. *Feijoó,* 106 D.P.R. 838 (1978), sostuvimos al Tribunal Superior en su denegatoria de la moción para desestimar del Director de Personal en vista de que el empleado público recurrido en su petición jurada de *injunction* bajo nuestra Ley de Derechos Civiles (Ley Núm. 12 de 8 agosto, 1974—32 L.P.R.A. sec. 3524) alegó ser un empleado de carrera de la Oficina Central de Administración de Personal (O.C.A.P.) que no intervenía en la formulación de la política pública de la agencia y que fue despedido por razones políticas en violación de sus derechos constitucionales al debido proceso de ley y a la libre asociación y creencia. Devolvimos el caso a instancia y una vez allí en su segunda etapa el demandado Director de Personal radicó una moción de sen-

tencia sumaria($^1$) cuya alegación central es que el deman-
dante carece de todo "interés propietario" en su puesto toda
vez que el mismo es uno de confianza. Resolvió el Tribunal
Superior que no existe controversia en cuanto a dichos par-
ticulares que no fueron rebatidos de modo alguno por el de-
mandante-recurrido pues "se cruzó de brazos y no se enfrentó,
conforme a la Regla 36, a los documentos y declaraciones ju-
radas sometidos por el demandado". En tal virtud la sala de
instancia relató los hechos probados en la siguiente parte de
su resolución:

"A tenor con la Regla 36.4, supra, no hay controversia sobre
los siguientes hechos:

1) El demandante comenzó a trabajar en la Oficina de Per-
sonal el 17 de agosto de 1976, en un puesto de Director Ejecutivo
V, con un sueldo mensual de $1,630. Dicho puesto estaba en el
Servicio Sin Oposición, en virtud de la Ley 345 del 12 de mayo
de 1947, Sección 8(b) (2), según enmendada por la Ley 59 del
6 de junio de 1960.

2) Las funciones del demandante fueron, hasta el momento
de su despido, las de dirigir la División de Recursos Externos de
la Oficina de Personal, antes Oficina de Coordinación de Progra-
mas I.P.A., la cual tenía la función básica de conseguir los recur-
sos externos necesarios, mayormente el coordinar, programar y
obtener fondos federales.

3) El 28 de septiembre de 1976, la Directora de la Oficina de
Personal designó los puestos de confianza de la Oficina, entre
los cuales no estaba el puesto del demandante.

4) Con efectividad al 1ro. de octubre de 1976, se preparó un
formulario sobre Informe de Cambio Especial C., mediante el
cual el demandante pasó del Servicio Sin Oposición al Servicio
de Carrera. Este cambio afectó tanto al puesto como el status del
empleado, señor Pierson Muller.

5) No hay controversia en cuanto a que al ser cambiado su
status de empleado, el demandante no fue sometido a ninguno de

---

($^1$) El juez la describe en su resolución como acompañada de 17 docu-
mentos que constan de 110 páginas y memorándum de 31 páginas que ante
la inercia del demandante hicieron prueba en apoyo de sus determinaciones
y conclusiones.

los pasos previos requeridos para un nombramiento de carrera, por ejemplo, no tomó examen alguno, no fue sometido a evaluación, no fue colocado en ternas o quintas, no compitió con personal alguno para el puesto. En otras palabras, fue un cambio automático en virtud de la interpretación que la Directora le dio a la Ley Núm. 5 del 14 de octubre de 1975, 3 L.P.R.A. 130 et seq. Este informe de cambio no aparece aprobado por persona alguna.

6) El 8 de febrero de 1977 el nuevo Director de Personal aprobó un nuevo plan de puestos de confianza en la agencia, incluyéndose el puesto del demandante. Ello en base de la sección 5.10 de la Ley 5, supra, ya que dicho funcionario:

'Interviene y/o colabora sustancialmente en la formulación de la política pública y en asesoramiento al jefe de la Agencia.' (*Exbs.* págs. 92–94.)

7) El 8 de febrero de 1977 se preparó otro Informe de Cambio Especial mediante el cual se incluyó al demandante en el Servicio de Confianza. (*Exbs.* pág. 110).

8) El demandante continuó desempeñando el puesto hasta que con fecha del 14 de abril de 1977 el demandado le envió la siguiente carta:

'Estimado señor Pierson:

A tenor con nuestra conversación y de acuerdo con el esquema de puestos de confianza aprobado por nuestra Oficina, surge que la posición que usted ocupa es una de confianza a tenor con la sección 5.10 de la Ley de Personal del Servicio Público y del Reglamento que la implementa. Como usted bien conoce los empleados de confianza son de libre nombramiento y remoción y deben dar paso a los cambios que ocurran en la dirección de las Agencias.

El puesto que usted ocupó inmediatamente antes de entrar en vigor la Ley de Personal del Servicio Público era uno de libre nombramiento y remoción por estar comprendido en el servicio sin oposición, bajo el esquema de la Ley Número 345 del 12 de mayo de 1947. Por tal motivo entendemos que no tiene derecho a reinstalación. En el supuesto de que hubiera sido de carrera, aún estaría usted en el período probatorio.

La necesidad de poder contar con los puestos de confianza necesarios para implementar la política pública que le ha sido encomendada a esta Oficina, nos lleva a la triste determina-

ción de dar por terminados sus servicios con ésta el día 30 de abril de 1977.

Agradecemos el tiempo que colaboró para esta Agencia y le deseamos el mayor de los éxitos en sus futuras gestiones de trabajo, en las cuales si le podemos ayudar en algo, estaremos a sus órdenes.'

A tenor con la Regla 36.4, se dispone que no existe controversia sustancial alguna sobre los hechos anteriormente expuestos, por lo que los mismos se considerarán probados durante el juicio."

Concluyó finalmente el juez sentenciador que el cambio especial efectuado por la Sra. Guzmán, anterior Directora de O.C.A.P. el 1° de octubre de 1976 bajo cuya autoridad reclama el recurrido habérsele transferido del servicio sin oposición al servicio de carrera, no tuvo consecuencia legal alguna por carecer ella de facultad en ley para ordenar tal cambio en status del empleado en vista de que la Ley de Personal del Servicio Público (Núm. 5 de 14 de octubre de 1975) en su Art. 9(5) ordena que aquellos empleados que ocuparen puestos en el Servicio Sin Oposición bajo la anterior Ley de Personal de 1947 "pasarán a ser empleados de confianza mientras la autoridad nominadora los retenga en sus puestos, pero sus sucesores serán empleados de carrera."

Sin embargo, la sala de instancia rehusó dictar sentencia sumaria. Concluyó que aun cuando Pierson Muller fuera un empleado de confianza, no podía ser despedido por motivos políticos y tenía una causa de acción por daños y perjuicios contra el Director de O.C.A.P.; y consecuentemente remitió el caso a juicio plenario para dilucidar la que considera cuestión justiciable. Estimó el juez sentenciador que *Pierson Muller I* extendió la protección constitucional contra el despido por discrimen político a todo empleado público sea de carrera o de confianza, aun cuando no tenga un "interés propietario" en el puesto. Notamos error en esta última conclusión y al recurrir el Director de O.C.A.P., expedimos el 9 de noviembre de 1978 la siguiente orden para mostrar causa:

"Admitida la condición de empleado de confianza del demandante que prima facie lo sujeta a la norma de libre selección y remoción de la Sec. 5.10 de la Ley de Personal del Servicio Público (3 L.P.R.A. sec. 1350) y vistos el Art. 2 de la Carta de Derechos (Const. Art. II, sec. 2); las secs. 1 y 2 del Art. I de la Constitución del Estado Libre Asociado, y nuestra decisión en *Díaz González* v. *Tribunal Superior,* 102 D.P.R. 195 (1974), el demandante recurrido tendrá un término hasta el 30 de noviembre de 1978 para mostrar causa por la que no deba anularse la Resolución dictada el 15 de septiembre de 1978 por la Sala de San Juan del Tribunal Superior, y en su lugar dictar sentencia sumaria desestimando la petición de injunction bajo la Ley de Derechos Civiles (32 L.P.R.A. sec. 3524)."

El demandante Pierson Muller, quien no recurrió de la decisión de instancia limitando el juicio a la determinación de los derechos de un *empleado de confianza* en caso de despido por razón de sus ideas políticas, impugna en su escrito de contestación la conclusión central del juez sentenciador quien correctamente lo identificó con dicha clasificación de confianza.

■ Como aparece de las transcritas determinaciones de hecho, el demandante era un funcionario de la Oficina de Personal desde agosto de 1976 en un puesto de Director Ejecutivo V con sueldo mensual de $1,630 que estaba comprendido en el Servicio *sin Oposición* de la anterior Ley de Personal del Gobierno (Núm. 345 de 12 de mayo de 1947—3 L.P.R.A. sec. 641 y ss.) en el grupo definido por su Art. 8(b)(2) que incluía los cargos de "[n]o más de quince (15) funcionarios y/o empleados de cada agencia, cuyas funciones sean de tipo normativo, especializado, asesorativo o de confianza." En la nueva Ley de Personal del Servicio Público (Núm. 5 de 14 de octubre de 1975—3 L.P.R.A. sec. 1301 y ss.) que no reconoce nada más que dos categorías de empleados: de carrera y de confianza, esta última clase se define([2]) como ". . . empleados

---

([2]) Incluye no funcionarios como ayudantes, secretarias personales, y conductores de vehículos.

que intervienen o colaboran sustancialmente en la formulación de la política pública, que asesoran directamente o que prestan servicios directos al jefe de la agencia . . ." y se dispone que dichos empleados de confianza serán de libre selección y remoción. (Sec. 5.10 Ley—3 L.P.R.A. sec. 1350). Anteriormente resolvimos que los empleados en aquel Servicio *sin Oposición* podían ser despedidos por la autoridad nominadora en ejercicio de una facultad que no requiere justa causa ni previa formulación de cargos. *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923, 929 (1974). Con un sentido igualitario en *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972), extendimos la protección constitucional contra discrimen de la Sec. 1 de la Carta de Derechos (Art. II, Sec. 1, Const. del E.L.A.) a modestos empleados irregulares desvalidos, que habían quedado fuera de la seguridad provista a los empleados permanentes por la Ley Municipal y el sistema de mérito del Municipio. Puntualizamos ahora que los empleados municipales así favorecidos no podrían nunca clasificarse como funcionarios de confianza, encargados de formular política pública y normas de gobierno, extremo vital que permitió a *Báez Cancel* dar protección constitucional a dichos empleados municipales sin vulnerar derechos fundamentales del pueblo en la organización del gobierno bajo régimen democrático. El amparo contra el discrimen brindado a éstos y a aquellos otros empleados que no intervienen ni colaboran sustancialmente en la formulación de la política pública, ni asesoran directamente ni prestan servicios directos al jefe de la agencia, no ha sido abolido por el cambio de nomenclatura en la nueva legislación que absorbió dicho personal en una expandida categoría de Servicio *de Confianza*, según la Sec. 5.9 de la Ley de Personal de 1975. (3 L.P.R.A. sec. 1349.)

■ La razón por la cual nuestra legislación sobre personal de servicio público ha reconocido la existencia y necesidad de un personal de confianza "de libre selección y remoción", la encontramos en la esencial naturaleza electiva de un

sistema de gobierno con la responsabilidad de realizar los programas, planes normativos y la política pública que merecieron la aprobación mayoritaria en los comicios.

■ No es ésta la primera vez que confrontamos una acción administrativa por la que se intentó cambiar un puesto del Servicio *sin Oposición* al Servicio *por Oposición* hoy llamado de Carrera, con el efecto de trasladar a un empleado de funciones normativas y de confianza, a un status que permitía su remoción únicamente por justa causa y previa formulación de cargos y audiencia. Al rechazar, como destructivo del sistema de méritos, el cambio que favoreció a un empleado que no había concurrido a exámenes, ni competido con otros solicitantes, dijimos en *Díaz González* v. *Tribunal Superior*, 102 D.P.R. 195, 210 (1974) :

"Debe ser claro que los funcionarios normativos (*policy making*) del ejecutivo y de la mayoría legislativa deben tener una filosofía de gobierno y unas actitudes frente a los problemas del país que sean compatibles—y no contrarias—a la del gobierno electo por el pueblo y bajo el cual sirven. Eso da vigencia al mandato popular, pues hace posible realizar el programa de gobierno que el electorado favoreció en las urnas. Lo contrario sería frustrar dicho mandato popular. La Ley de Personal, reconociendo esa realidad, sabiamente coloca a esas posiciones en los servicios Exento y Sin Oposición. También coloca en esos servicios mencionados a los cargos o empleos de confianza, como lo son usualmente el del ayudante de un ejecutivo exento o el de su secretaria personal. Esos funcionarios normativos y esos empleos o cargos de confianza constituyen un reducido por ciento de todo el personal del gobierno."

■ Los cambios de administración determinados en las elecciones generales necesariamente afectarán aquellos empleos cuyos incumbentes implementan política pública, o ejercen funciones normativas o de confianza, toda vez que éstos no pueden mediatizar la voluntad popular expresada en los comicios en favor de particulares programas de gobierno y eligiendo nuevos administradores. La Constitución del E.L.A. no tolera obstrucciones del legítimo ejercicio del poder que

emana de la soberanía del pueblo. Declara en su Preámbulo que la voluntad del pueblo es la fuente de poder público; y reitera el principio en el Art. I, Sec. 1ª expresando que el poder político del Estado emana del pueblo y se ejercerá con arreglo a su voluntad; y en la siguiente Sec. 2ª al decir que los Poderes Legislativo, Ejecutivo y Judicial estarán subordinados a la soberanía del pueblo de Puerto Rico; y afirmando el valor y eficacia del voto en el la sección 2ª de la Carta de Derechos (Const. Art. II, Sec. 2) cuando ordena: "Las leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral."

La franquicia electoral perdería su propósito si los hombres elegidos para gobernar no pudieran impartir eficacia al voto depositado en la urna. (³) La divulgación alcanzada por este básico principio de régimen democrático es suficiente aviso para los empleados llamados de confianza de que el superior valor de eficacia del voto excluye en ellos expectativa de continuidad y todo "interés propietario" en tales puestos sensitivos. Se produce la superación de la aspiración del individuo por la suprema acción de la afirmación democrática, circunstancia que refleja el Informe de la Comisión de la Carta de Derechos de la Convención Constituyente suscrito por su

---

(³) "No es sólo la emisión del voto o su conteo mecánico lo que protege la Constitución. Es la función—el cargo—el efecto del voto, lo que está protegido.

"Un voto no es un objeto de arte. Es el sagrado y más importante instrumento de la democracia y la libertad. Simplemente, el voto nada significa —deja de servir el propósito de la sociedad democrática—a menos que, contado en la suma con los votos de otros ciudadanos, resulte en la realización de la voluntad de dichos ciudadanos siempre que sean más numerosos que los proponentes de un criterio contrario. Ahí radica el significado y efecto de las grandes decisiones constitucionales de este Tribunal.

"En resumen, debemos vigilar que nuestra Constitución proteja no simplemente el derecho a depositar un voto, sino el derecho a que ese voto sirva a plenitud su propósito. . . ." Juez Fortas con los Jueces Warren y Douglas disintiendo en *Fortson* v. *Morris*, 385 U.S. 231, 250 (1966).

Presidente, Sr. Jaime Benítez el 14 de diciembre de 1951, a la pág. 47: ". . . La protección más liberal de los derechos del individuo, que es la establecida .en esta Carta de Derechos, no puede perder de vista el básico principio de que la salud del pueblo es la suprema ley. Los derechos individuales tienen que entenderse dentro del cuadro general de la sociedad con arreglo a las limitaciones inherentes a la vida en común. Ya hemos indicado en ocasiones anteriores cómo resulta una y otra vez necesario tener la ecuanimidad que permita conjugar los derechos individuales que desmesurados podrían resultar conflictivos entre sí y los derechos de la comunidad en su vida, salud y bienestar, representada esta comunidad por la Asamblea Legislativa." *Cf. Hermina González* v. *Srio. del Trabajo*, 107 D.P.R. 667 (1978).

El demandante recurrido cuya condición de empleado de confianza no fue alterada por el Cambio Especial C de 1° de octubre de 1976, hecho sin facultad en ley,[4] quedó sujeto a despido al libre arbitrio de la autoridad nominadora, sin recurso a protección constitucional en su empleo.

*Se expedirá el auto de certiorari, y se dictará sentencia de conformidad en lugar de la resolución recurrida, que será anulada.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión.

---

[4] Ordena la Sec. 5.11(7) de la Ley de Personal de 1975 (3 L.P.R.A. sec. 1351(7)):

"Sólo se autorizará el cambio de categoría de un puesto de confianza a un puesto de carrera cuando ocurra un cambio de funciones o en la estructura organizativa de la agencia que así lo justifique, si el puesto está vacante o, de no estar vacante, si el incumbente puede ocuparlo sujeto a las siguientes condiciones:

(a) que reúna los requisitos establecidos para la clase de puesto;

(b) que haya ocupado el puesto por un período de tiempo no menor que el correspondiente al período probatorio para la clase de puesto;

(c) que apruebe o haya aprobado el examen establecido para la clase de puesto; y

(d) que la autoridad nominadora certifique que sus servicios han sido satisfactorios."