ARTURO RAMOS VILLANUEVA, demandante y recurrido, *v.* JUAN CINTRÓN, SECRETARIO DE COMERCIO, ETC., demandados y recurrentes.

*Número:* R-81-137 *Resuelto:* 31 de marzo de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Lirio Bernal, Procuradora General Auxiliar,* abogados de los demandados y recurrentes; *Noel Vera Mercado,* abogado del demandante y recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Confirmamos la opinión del Tribunal Superior anulando en las circunstancias fácticas del caso de autos un despido por motivos políticos. La tesis de los demandados recurrentes de que dicho despido es válido por razón de que el cargo que ocupaba el recurrido Ramos Villanueva —Director para la región de Aguadilla— era de confianza y participaba en la formulación de política pública, vulnera las garantías básicas de nuestra Constitución, la Primera Enmienda de la Constitución federal y su más reciente jurisprudencia. Nos explicamos.

## I

La ilustrada sala sentenciadora encontró probado que la cesantía de Ramos Villanueva se debió principalmente a su afiliación política. Aplicó entonces la norma establecida por el Tribunal Supremo federal en *Branti* v. *Finkel,* 445 U.S. 507 (1980), y determinó que el despido era nulo. Al así hacerlo, actuó correctamente.

En *Branti,* decisión basada en el derecho fundamental de libertad de asociación[1] el Tribunal federal

---

[1] Se extienden a Puerto Rico los derechos fundamentales protegidos por la Constitución federal y las normas jurisprudenciales definitorias de su contenido y alcance. *Pueblo* v. *Duarte Mendoza,* 109 D.P.R. 596 (1980).

estimó que "si la Primera Enmienda protege a un empleado público de despido por lo que ha hablado, también debe protegerlo de separación basada en sus creencias. Bajo esta línea de análisis, a menos que el gobierno pueda demostrar 'un interés superior' de importancia vital que requiera que las creencias privadas de la persona coincidan con la autoridad nominadora, sus creencias no pueden constituir la razón única para privarlo de continuidad en el empleo". Pág. 515. Citando a *Elrod* v. *Burns*, 427 U.S. 347 (1976), reconoció que la afiliación partidista podía ser "un requisito aceptable para algunos tipos de empleo en el Gobierno", y por ende concluyó que "si las creencias políticas privadas del empleado interfieren con el descargo de sus deberes públicos, sus derechos de Primera Enmienda deberán ceder al interés vital del Estado en mantener la eficacia y eficiencia gubernamental . . .". En virtud de esos razonamientos resolvió:

> En resumen, la indagación última no es si la etiqueta de "formulador de normas" o "de confianza" aplica a un puesto en particular, *por el contrario, la cuestión es si la autoridad nominadora puede demostrar que la afiliación político-partidista es un requisito apropiado para el desempeño del cargo público envuelto.* (Énfasis suplido.) Págs. 517–518.

■ De los pronunciamientos expuestos es razonable concluir que recae sobre la autoridad nominadora (el gobierno) desfilar prueba demostrativa de que la afiliación política particular del empleado es "requisito apropiado" para el desempeño efectivo del cargo en cuestión, o sea, le corresponde establecer la existencia de intereses gubernamentales que son de importancia y jerarquía superior a los derechos del empleado bajo la Primera Enmienda.

En este aspecto, en el caso de autos, fracasó el Estado. Surge del récord que la autoridad nominadora no presentó prueba alguna demostrativa de que la afiliación política del incumbente de la plaza que ocupaba Ramos Villanueva fuera requisito apropiado para el desempeño efectivo del

cargo. Por el contrario, la Directora de Personal de la agencia manifestó "no tener conocimiento de que la afiliación política del incumbente de la plaza tuviera impacto alguno o en forma alguna fuera esencial al desarrollo de los programas de la agencia". Su testimonio quedó corroborado por la prueba del propio Estado en el sentido de que plazas análogas —la de los directores regionales de Guayama y Fajardo— "están clasificadas en el *servicio de carrera* sin que tal situación haya causado problemas de naturaleza alguna en el desarrollo de los programas del Departamento . . .".

Para superar el impacto decisivo negativo de esa realidad, los recurrentes otorgan valor desproporcionado a una carta del 23 de junio de 1973, [2] en la cual el entonces Secretario de Comercio, Sr. Damián Folch, informaba a la Directora de Personal, Sra. Milagros Guzmán, su acción de clasificar la plaza que ostentaba Ramos Villanueva en el "Servicio sin Oposición". Un análisis detenido de su contenido, a lo sumo, refleja la siguiente visión de su autor: (a) que la persona a ocupar el puesto debería ser de la confianza del Secretario; y (b) que "tendr[í]a que tomar decisiones a iniciativa propia" para implementar la ley, esto es, participaría en cierto modo en la formulación de normas. A menos que por inferencia concluyéramos que la expresión al efecto de que ese funcionario ". . . me representa como Secretario de Comercio, a la vez que

---

[2] En lo pertinente reza:

"A esa misma fecha incluiré en el Servicio sin Oposición el puesto número 236 del Director Ejecutivo I asignado a la Oficina Regional de Aguadilla. Este puesto, cuyo título funcional es de Director Regional, fue creado 1ro de julio de 1972 y desde entonces ha permanecido en el Servicio por Oposición.

"Esta acción está basada en que el incumbente a nombrarse debe ser una persona de mi entera confianza como Secretario de Comercio. La Oficina Regional de Aguadilla, dada la situación geográfica, en parte, necesita bregar con bastante independencia, toda vez que el Director Regional tendría que tomar decisiones a iniciativa propia con los fines de poder implementar y darle continuidad a la encomienda que por Ley se nos ha dado. En sus funciones él me representa como Secretario de Comercio, a la vez *que representa nuestro Gobierno.*"

representa nuestro Gobierno", engloba, comprende y expone un reclamo de estricta afiliación partidista, no existe ninguna prueba que tienda a favorecer la tesis del Estado. Aun así, según hemos indicado, habría que descartar, sin justificación aparente, el testimonio directo no contradicho de la Directora de Personal en el sentido de que la afiliación política del incumbente no tenía "impacto alguno o en forma alguna [era] esencial al desarrollo de los programas de la agencia". En otras palabras, el récord es contrario a las siguientes interrogantes: ¿Es necesaria una afiliación política particular para el fiel desempeño de las funciones del cargo? ¿Existen intereses gubernamentales de suficiente peso que justifiquen invadir los derechos constitucionales del incumbente? Repetimos, la evidencia presentada por el Estado sólo permite contestar estas preguntas en la negativa.

## II

 Aclarados los extremos de la prueba, fácil es advertir que la acción de la autoridad nominadora es una intromisión indebida en el derecho de Ramos Villanueva a no ser discriminado por razón de preferencias o ideas políticas consagrado en nuestra Constitución. Art. II, Secs. 1, 4, 6, 7. [3] No cabe duda de la naturaleza sustancial de ese derecho —fundamental en un sistema de gobierno democrático y corolario de la dignidad, respeto e igualdad ante

---

[3] Todo empleado, aun los empleados de confianza gozan de la protección contra el discrimen por razón de ideas políticas. En *Báez Cancel* v. *Alcalde de Guaynabo*, 100 D.P.R. 982, 987 (1972) expresamos:

"La Sec. 1 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico prescribe en forma clara que 'no podrá establecerse discrimen alguno por motivo de raza, color, . . . ideas políticas o religiosas'. La proscripción del discrimen es clara y terminante. *Su texto no permite distinción alguna.* Quiere decir lo que dice. Que el Estado en ninguna de sus múltiples funciones o servicios puede discriminar contra un *ciudadano* por el mero hecho de ser éste negro, ateo o por sus ideas políticas. Cualquier otra interpretación enervaría su eficacia. Fortalecerla y no enervarla es nuestro deber, como los principales custodios de la Constitución."

la ley. Aunque no es ilimitado y, en determinadas situaciones, puede ceder ante intereses colectivos de superior jerarquía —*Hermina González* v. *Secretario del Trabajo*, 107 D.P.R. 667, 675 (1978); *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436, 446 (1975); *Mari Bras* v. *Casañas*, 96 D.P.R. 15, 21 (1968)—, en las circunstancias del presente caso —y expuesto a un análisis de estricto escrutinio judicial, *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267 (1975); *León Rosario* v. *Torres*, 109 D.P.R. 804 (1980)— ese derecho debe prevalecer.

## III

Para ultimar, esta decisión no pasa juicio sobre la validez per se de una clasificación de confianza,[4] ni cuestiona la facultad de la autoridad nominadora, en tales instancias, para prescindir de los servicios de un incumbente sin previa notificación, formulación de cargos y celebración de vista. *Díaz González* v. *Tribunal Superior*, 102 D.P.R. 195, 197 (1974). Tampoco prejuzga la posibilidad de que en otros casos de despido, atribuibles únicamente a razones políticas, pueda legítimamente detectarse y demostrarse —a satisfacción del Poder Judicial— que el requisito de "afiliación política" está expresamente establecido o implícitamente sumergido e incluido en la clasificación anterior, adoptada mediante acción legislativa, ejecutiva o administrativa al crear un puesto bajo la categoría de *confianza*.

Nuestra decisión simplemente significa que el diseño constitucional prevaleciente reconoce y permite que, en determinadas circunstancias, pueda válidamente exigirse una particular afiliación político-partidista como

---

[4] Recuérdese que la prueba incontrovertidamente estableció que los directores regionales de Guayama y Fajardo estaban clasificados como funcionarios *de carrera*, mientras que la clasificación de Ramos Villanueva era *de confianza*. Lo menos que podemos afirmar es la incongruencia que ello representa en la implementación uniforme y científica de un sistema de méritos de personal.

requisito para obtener o mantener un empleo público. Sin embargo, en virtud de la excelencia que presupone y persigue un sistema de personal basado en el mérito, la continuidad y estabilidad mínimas en el funcionamiento gubernamental —independientemente de quién temporalmente ostenta el mandato del pueblo— y la madurez y tolerancia democrática a que aspira nuestra Constitución, es razonable concluir que dichos casos constituyen la excepción y no la regla general. El caso de autos ciertamente no es susceptible de ubicarse en la norma de singularidad contemplada.

Por los fundamentos expuestos, en estricta juridicidad y análisis constitucional, *procede sentencia que confirme el dictamen del Tribunal Superior que decreta nulo el despido.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente. El Juez Asociado Señor Irizarry Yunqué no intervino.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

Los hechos de este caso de despido están expuestos con claridad y en forma condensada en determinaciones originales, suplementadas por unas adicionales, de la Sala de Aguadilla, que transcribimos:

> [Hechos probados] El Sr. Antonio [*sic*] Ramos Villanueva fue designado el 10 de julio de 1973 para ocupar el puesto de Director Regional del Programa de Comercio Local del Departamento de Comercio para la Región de Aguadilla. Su puesto, a la fecha de nombramiento era en el servicio sin oposición.
>
> En tal capacidad, sus funciones eran de naturaleza eminentemente ejecutiva. Entre otras, incluía: a) asesorar al Secretario Auxiliar del Programa de Comercio Local en asuntos relacionados con la educación y adiestramiento de personal del comercio; b) planificar, dirigir, supervisar y evaluar todas las actividades técnicas y administrativas relacionadas con los programas de desarrollo del comercio

en la región; c) establecer métodos de trabajo que faciliten la consecución de los objetivos del programa; d) coordinación con otras agencias; e) asesorar al Secretario Auxiliar del Programa de Comercio Local en el campo de actividades del programa en la región.

Este puesto fue creado originalmente en el servicio por oposición. A solicitud del Secretario de Comercio a la Oficina de Personal en junio de 1973, fue transferido al servicio sin oposición. Se fundamentó la solicitud en que el incumbente a ser nombrado debía ser una persona de la confianza del Secretario. Además, que tal persona necesitaría bregar con bastante independencia y tomar decisiones de iniciativa propia a los fines de llevar adelante el programa de la agencia.

Aprobada la nueva Ley de Personal de 1975, el puesto ocupado por el señor demandante, (ahora clasificado como Director Ejecutivo) fue incluido entre los puestos de confianza en el Departamento de Comercio. Tal clasificación fue aceptada por la Oficina de Personal de San Juan mediante memorando al Secretario de Comercio, fechado 28 de septiembre de 1976. Se hizo la correspondiente reasignación de la plaza en un puesto en el servicio sin oposición a puesto de confianza, efectivo el día primero de octubre de 1976.

Tras el cambio de administración ocurrido el día 2 de enero de 1977, se remitió comunicación al demandante fechada 3 de febrero de 1977 informándole que se le separaba del puesto por ser uno de confianza, siendo dicha separación el día 7 de febrero de dicho año efectiva.

Pocos días después de la separación del demandante, se designó a otra persona para ocupar el mismo puesto.

La prueba aportada nos convence fuera de duda que la cesantía del demandante y su sustitución se fundamentó en el criterio principal de afiliación política. El demandante es una persona plenamente identificado con el Partido Popular, que fue derrotado en las elecciones de 1976; su sustituto es una persona identificada con el Partido Nuevo Progresista, que ganó dichas elecciones.

A la fecha de su cesantía, el demandante llevaba 16 años continuos de servicios como empleado público y a base de su capacidad y mérito había ascendido desde un puesto de Auxiliar de Ingeniería en la Junta de Planificación hasta el de Director Regional del Departamento de Comercio a la

fecha de su despido. No hubo prueba alguna, ni intento alguno de la parte demandada tendiente a desfilar prueba a los fines que el demandante no fuera una persona con la capacidad, conocimientos y habilidades necesarias para desempeñar la plaza que ocupaba. Tampoco hubo prueba alguna demostrativa de que su afiliación política distinta a la del partido en el poder creara o pudiera crear problemas de clase alguna en la implementación de los programas de gobierno en ese departamento. Aún más, la Directora de Personal de la Agencia expresó no tener conocimiento de que la afiliación política del incumbente de la plaza tuviera impacto alguno o en forma alguna fuera esencial al desarrollo de los programas de la agencia.

La prueba de la propia parte demandada demostró, además, que la plaza de Director Regional para las regiones de Guayama y Fajardo están clasificadas en el servicio de carrera, sin que tal situación haya causado problemas de naturaleza alguna en el desarrollo de los programas del Departamento para esas regiones. Tales hechos permiten concluir que la clasificación del puesto de Director Regional de Aguadilla como puesto de confianza, aún cuando constituye una clasificación válida de conformidad con la Ley y Reglamentos vigentes, obedece más bien a una situación de conveniencias funcionales y administrativas del Departamento que a cuestiones de una necesidad imperativa en materia de libertad absoluta para la selección del incumbente de la plaza. Es oportuno señalar que la decisión en cuanto a puestos a ser incluidos como de confianza la hace el propio jefe de la agencia. La intervención de la Oficina de Personal es solo a los efectos que tal asignación se ajusta a las normas aplicables de la Ley y el Reglamento de Personal.

[Conclusiones de hecho adicionales] El demandante, al momento de ser seleccionado Director para la Región de Aguadilla del Departamento de Comercio, ocupaba una plaza de maestro coordinador de área en periodo probatorio en el Departamento de Instrucción Pública, la que ocupó hasta el día anterior a iniciarse en la Plaza de Director Regional mencionada.

Por razones de conveniencia administrativa de las agencias su movimiento de una agencia a otra se hizo mediante el procedimiento de renuncia en el Departamento de Instrucción y nuevo nombramiento en el Departamento de Comer-

cio, pero transfiriéndosele las diversas licencias acumuladas en el Departamento de Instrucción.

En su capacidad de Director Regional del Departamento de Comercio, el demandante era el responsable de poner en vigor en la región los diversos programas departamentales adoptando aquellas medidas y normas intrarregionales necesarias a tal fin.

El demandante era el representante del Secretario de Comercio en la región, con facultad para hacer cumplir aquellas políticas (*policies*) que se adoptaban al nivel departamental central.

Según consta de comunicación dirigida por el Secretario de Comercio al Director de Personal en ocasión en que se solicita un cambio de status de la plaza de Director Regional del servicio por oposición al servicio sin oposición de junio de 1973, el Director Regional debe ser una persona que goce de la confianza personal del Secretario de Comercio por ser la persona que le representa oficialmente en todos los actos oficiales en la región.

Con fundamento en estos hechos el Tribunal Superior concluyó que la característica de libre selección y remoción atribuida por la Ley de Personal a los empleados de confianza, 3 L.P.R.A. sec. 1350, pierde toda eficacia por acción de la cláusula contra discrimen de la Constitución de 1952, Art. II, Sec. 1, si el ejercicio de la facultad de despedir por el jefe de agencia está contaminado con elementos de discrimen. Reconoció como excepción única a la acción paralizante de la proscripción constitucional del discrimen, la que se da en *Branti* v. *Finkel*, 445 U.S. 507 (1980), cuando la afiliación política del empleado es condición esencial al desempeño de peculiares funciones del cargo. Al recurrir el Secretario de Gobierno, notamos conflicto con nuestra decisión en *Pierson Muller II* v. *Feijoó*, 108 D.P.R. 261 (1978), y expedimos auto revisión.

El Tribunal Superior buscó apoyo para su decisión del caso en *Branti* v. *Finkel*, supra, a pesar de que el Tribunal Supremo de Estados Unidos sigue el orden de razonamiento adoptado por este Tribunal en *Pierson Muller II* al

expresar: "Si la Primera Enmienda protege un empleado público de despido por lo que ha hablado, también debe protegerlo de separación basada en sus creencias. Bajo esta línea de análisis, a menos que el gobierno pueda demostrar 'un interés superior, de importancia vital', determinante de que las creencias privadas de la persona coincidan con la autoridad empleadora, sus creencias no pueden constituir la razón única para privarlo de continuidad en el empleo público." *Branti* v. *Finkel,* supra, págs. 515–516. Y haciendo referencia a *Elrod* v. *Burns,* 427 U.S. 347 (1976), añade la opinión en *Branti:* "La afiliación partidista puede ser un requisito aceptable para algunos tipos de empleo en el Gobierno. Así cuando las creencias políticas privadas del empleado interfieren con el descargo de sus deberes públicos, sus derechos de Primera Enmienda deberán ceder al interés vital del Estado en mantener la *eficacia* y *eficiencia* gubernamental. . . . En fin, la encuesta última no es si la etiqueta de 'formulador de normas' (*policy maker*) o 'de confianza' aplica a un puesto en particular; por el contrario, la cuestión es si la autoridad empleadora puede demostrar que la afiliación partidista resulta un requisito apropiado para el desempeño efectivo del cargo público envuelto." (Énfasis nuestro.) Págs. 517–518.

En *Pierson Muller II,* supra, concluimos que el derecho de la mayoría democrática del pueblo a organizar el Gobierno, por surgir de la voluntad colectiva expresada en el sufragio de los más, tiene prioridad y preferencia, sobre el derecho del empleado de confianza a retener su empleo con entera abstracción de sus ideas políticas. En el inevitable choque que nace de la incompatibilidad de intereses protegidos por las cláusulas de poder político de la Constitución y este precepto de protección individual contra el discrimen, hemos resuelto que debe ceder el interés individual, en reconocimiento del predominante interés público en la eficiencia de la administración. La presente situación de conflicto es aún más definida que la

planteada en *Sucesión Capella* v. *Iglesia Pentecostal,* 102 D.P.R. 20 (1974), entre el derecho a la vida íntima y el de culto religioso, toda vez que los derechos individuales allí afectados giraban en una órbita limitada de espacio y personas, mientras que el reclamo del demandante recurrido se proyecta con dimensiones de someter a su particular conveniencia el interés preferente en la eficaz realización del programa de Gobierno. " 'En el ejercicio de sus derechos y en el disfrute de sus libertades, toda persona estará solamente sujeto a las limitaciones establecidas por la ley con el único fin de asegurar el reconocimiento y el respeto de los derechos y libertades de los demás, y de satisfacer las justas exigencias de la moral, del orden público y del BIENESTAR GENERAL en una sociedad democrática.' " Declaración Universal de los Derechos del Hombre (París, 10 Dic., 1948) citada en *Hermina González* v. *Srio. del Trabajo,* 107 D.P.R. 667, 675 (1978).

El administrador o jefe de agencia gubernamental tiene la encomienda y el deber de realizar un programa y de efectuar una política pública del modo más eficaz. Por necesidad, sus ayudantes inmediatos han de estar identificados con esa gestión pública porque sobre ellos recae la orientación normativa de la misma, y de ahí la razón para que sean de libre selección y remoción por el jefe. La duración de su empleo la determina la confianza del jefe en su idoneidad y fidelidad para hacer efectiva la encomienda de gobernar. Este empleado de confianza no podrá oponer su libertad de expresión o de creencia para retener su puesto como disidente, pues con ello enervaría el superior interés del Estado en que los hombres llamados a gobernar puedan encauzar sus programas con óptima efectividad. Si a juicio del jefe de departamento la afiliación política del empleado de confianza lo coloca en plano de incompatibilidad ideológica con las normas y propósitos del administrador, éste siempre estará en entera

libertad para prescindir de sus servicios. Si el jefe ha de responder al pueblo por su gestión de administrador, parte de su compromiso es evitar que disidentes ideológicos en posiciones sensitivas de decisión la obstruyan o la derroten. Generalmente, las ideas sobre planes y programas de gobierno forman el contenido de la afiliación política de la persona, especialmente en la tradición partidista del régimen democrático, por lo que la licencia que confiere el superior interés público en materia de empleados de confianza no se detiene ante la protección del individuo contra discrimen provisto en nuestra Constitución. "Aunque la afiliación política no ha de ser criterio decisivo para llenar puestos de menor jerarquía en el Gobierno, la razón para admitir criterios ideológicos en niveles significativos de política pública, tiene la suficiencia apremiante que resiste un ataque de Primera Enmienda." Tribe, *American Constitutional Law*, 1978, pág. 706.

Tratándose de un cargo de confianza cuyo incumbente participa en la formulación de política pública y normas de gobierno, los hechos de este caso se rigen por la afirmación en *Díaz González v. Tribunal Superior*, 102 D.P.R. 195, 198 (1974), al efecto de que los Directores Regionales son álter egos del jefe de Departamento y como tales empleados de su estricta confianza sujetos a la facultad de libre selección y remoción. En sus propias determinaciones la sala de instancia revela la naturaleza esencial de confianza del puesto del recurrido desde que el anterior Secretario de Comercio, Sr. Damián Folch pidió que así se clasificara en carta a la Sra. Milagros Guzmán, Directora de Personal (25 junio, 1973) en que le notifica su acción de cambio del referido puesto de uno por oposición a uno de confianza con el siguiente texto:

A esa misma fecha incluiré en el Servicio sin Oposición el puesto número 236 del Director Ejecutivo I asignado a la Oficina Regional de Aguadilla. Este puesto, cuyo título funcional es de Director Regional, fue creado el 1ro. de julio

de 1972 y desde entonces ha permanecido en el Servicio por Oposición.

Esta acción está basada en que el incumbente a nombrarse debe ser una persona de mi entera confianza como Secretario de Comercio. La Oficina Regional de Aguadilla, dada la situación geográfica, en parte, necesita bregar con bastante independencia, toda vez que el Director Regional tendrá que tomar decisiones a iniciativa propia con los fines de poder implementar y darle continuidad a la encomienda que por Ley se nos ha dado. En sus funciones él me representa como Secretario de Comercio, a la vez que representa nuestro Gobierno.

Tan explícito documento le niega base a la observación del juez sentenciador en cuanto a que la clasificación de confianza respondía más bien a arreglos administrativos, y que no estaba convencido de que la afiliación política del Director regional, distinta a la del partido en el poder, creara problema de clase alguna en la efectuación de programas de gobierno. El magistrado, sin embargo, rectificó esa apreciación en las determinaciones adicionales arriba transcritas que definen las funciones del Director regional recurrido como normativas, y de participación crítica en la realización de la política pública del Departamento.

La naturaleza del cargo público de confianza del recurrido excluye inevitablemente su disidencia ideológica. La peculiar interpretación que de *Branti* v. *Finkel* hace la mayoría, resulta en derogación de dos explícitos mandatos de la Ley de Personal (Núm. 5 de 14 octubre, 1975) que en su Art. 5.10, inciso 4, expresamente incluye los directores regionales de agencias como empleados de confianza, y en el inciso 8 declara que "los empleados de confianza serán de libre selección y remoción". En cercana perspectiva, esta decisión niega al país el servicio público de los mejores hombres y mujeres que nunca podrían organizar su departamento o su agencia con un personal de confianza impuesto por los que se aferran a su silla en deliberado desafío del veredicto electoral; o por *injunction* del tribunal

que ampare su tozudez de rémora. Ninguna sociedad democrática es gobernable sin un número limitado de empleados de confianza que intervienen o colaboran en la formulación de la política pública y en la realización normativa de los programas de gobierno, que asesoran directamente o prestan servicios al jefe de la agencia. (Texto del Art. 5.10 citado, 3 L.P.R.A. sec. 1350.)

La espada que blandió este Tribunal con justicia para los empleados municipales temporeros en *Báez Cancel* v. *Alcalde de Guaynabo,* 100 D.P.R. 982 (1972), se ha convertido en ariete destructor de la efectividad en la administración pública. Ha engendrado la mayoría en errado concepto del principio de mérito, una figura de gobierno o administración cuyo servicio rehuyen los mejores, y que de atraer a alguno mal informado se encontrará dirigiendo una agencia con un personal de confianza inamovible. La total imposibilidad de funcionar la administración entrante con jefes y subjefes de agencias y demás personal de confianza del adversario derrotado en las elecciones es hecho de conocimiento general, notorio y a la vista ahora mismo en nuestro panorama político. El superior interés público en la organización del gobierno y en la eficiencia de la administración es patente en nuestro medio, no hay que sentar testigos para probarlo; ni *Branti* v. *Finkel,* ni la Primera Enmienda conducen a este resultado disolvente, ni el Tribunal Supremo de los E.E.U.U. sobrepondría la obstinación de un empleado, al valor y eficacia del sufragio.

La mayoría trae a *Báez Cancel* v. *Alcalde de Guaynabo,* supra, por los cabellos. Los allí protegidos por este Tribunal no eran directores regionales, ni asesores, ni ayudantes inmediatos que intervienen en la función normativa de gobierno; eran capataces, empleados de nómina, pertenecientes a la clase de *los más desvalidos,* cuya incumbencia en nada podía entorpecer la eficiente administración del municipio. De ellos al recurrido Director

regional hay una gran distancia, la que destaca la comunicación del Secretario de Comercio Folch, ante, al definir el incumbente Director Regional —de confianza según la Ley de Personal y *Díaz González* v. *Tribunal Superior*, supra— como la persona que le representa, y representa al Gobierno, al tomar decisiones independientes de su propia iniciativa en la consecución de la encomienda pública del Departamento de Comercio.

Es invitación al caos la abolición del concepto de empleado de confianza en nuestra Ley de Personal, inherente en la prohibición de remover adversarios políticos enclavados en puestos de decisiva función normativa, porque siendo personas honestas, capaces y eficientes en cargos de *confianza* la única razón para negarles esa confianza radica en su discrepancia ideológica con el nuevo jefe.

Entre la interpretación sociológica, método de mayor prestigio en la época presente, y la literal abstracta, la mayoría ha preferido esta última en su adhesión a *Branti*, supra, y su repudio del Prof. L. Tribe. Se resigna al predominio de la ficción: los jefes de gobierno seguirán escogiendo su personal de confianza y separarán de esas posiciones a los que discrepen de su ideología política cuando ésta, como inevitablemente ocurre, sea obstáculo en su leal ejecución de los programas y planes que ordenó el pueblo en las urnas. Sólo que por no contravenir a la mayoría de este Tribunal ningún motivo darán para la remoción dejando a la especulación de la opinión pública si existe causa estigmatizante para el despido del empleado, como la prevaricación, la ineptitud, la indisciplina, etc. Hasta que un empleado de confianza así removido haga acopio de la prueba, que en estos casos está a la mano, y en la vista de un *injunction* demuestre hasta la saciedad que aunque su superior ocultó la verdadera razón con silencio de Esfinge, ésta no fue otra que discrepancia ideológica. Y vendrá entonces una sentencia imponiendo al jefe de

departamento o de agencia como asesor, consultor y hombre de confianza al que bien pudo ser su más encarnizado adversario político([1]) y condenándolo al pago de indemnización. Hermosa manera de propiciar la eficiencia de un gobierno, y de respetar la voluntad manifiesta en el sufragio. Es hecho notorio que en Puerto Rico absolutamente *todos* los empleados de confianza en puestos normativos, de asesoramiento y colaboración en la función ejecutiva de un jefe, tienen los medios para probar en el tribunal que la única razón detrás de su despido fue la discrepancia en ideología política con el nuevo jefe. Morirá víctima de la ingenuidad el precepto de la Ley de Personal que declara estos empleados de libre selección y remoción. El auto de *injunction* y la sentencia en daños contra el funcionario discriminante —hoy fortalecidos por *Acevedo Díaz* v. *Collazo* [*Srio. de Servicios Sociales*], 112 D.P.R. 256 (1982)— se encargará de abolir la clasificación inserta en la ley, sin la cual simplemente no se puede gobernar. La situación nos recuerda el antiguo proverbio: El camino del infierno está empedrado de buenas intenciones. En mares de tormenta ya a la vista, sucumbirá la utópica premisa que hoy adopta el Tribunal, buena solamente para gobernar el Cielo.

Con estos antecedentes y fundamentos, revocaría la sentencia recurrida.

---

([1]) Puesto bajo juramento en toma de deposición, ¿qué otra motivación puede aducir el nuevo jefe?