JOSÉ CLEMENTE GONZÁLEZ, demandante y peticionario, *v.* DEPARTAMENTO DE LA VIVIENDA y OTROS, demandados y recurridos.

*Número:* O-83-483          *Resuelto:* 8 de noviembre de 1983

*Eudaldo Báez Galib* e *Ildefonso Freyre*, abogados del peticionario; *José Ramón Pérez Hernández*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El señor José Clemente González radicó el 13 de mayo de 1983 una demanda de *injunction*, debidamente jurada, ante el honorable Tribunal Superior de Puerto Rico, Sala de Mayagüez, contra el Departamento de la Vivienda de Puerto Rico y su Secretario, el Hon. Jorge A. Pierluisi, en la

que alegó, en síntesis, que: desde el mes de marzo de 1977 se venía desempeñando en el cargo de Director Regional en la ciudad de Mayagüez de la Corporación de Renovación Urbana y Vivienda, corporación adscrita al Departamento de la Vivienda de Puerto Rico; que con motivo de una controversia suscitada entre él y el señor Freddy Valentín, [1] quien, al igual que el demandante, es miembro y líder del Partido Nuevo Progresista en Mayagüez, el ingeniero Jorge Pierluisi, Secretario del Departamento de la Vivienda de Puerto Rico, a solicitud del referido señor Valentín, ordenó el traslado-ascenso del demandante a las oficinas centrales de dicho departamento, localizadas en la ciudad de San Juan, mediante carta al efecto de fecha 4 de mayo de 1983; y que "dicho traslado y aparente ascenso tiene los efectos de forzar la renuncia del demandante, ya que a éste le resultaría profundamente oneroso y perjudicial trasladarse con su familia a la ciudad de San Juan resultando tal determinación del Secretario equivalente a un despido". Suplicó del tribunal de instancia, que "dicte Sentencia prohibiéndoles [sic] terminantemente que despidan so color de traslado al demandante de su cargo".

La "parte demandada", mediante escrito de fecha 6 de junio de 1983, solicitó la desestimación de la demanda radicada por razón de haber acudido la parte demandante al foro judicial "sin agotar los recursos administrativos". Estando dicha moción ante la consideración del tribunal de instancia, el codemandado Pierluisi remitió al demandante dos cartas, ambas con fecha de 9 de junio de 1983. Mediante la primera de ellas, el ingeniero Pierluisi dejó sin efecto el traslado-ascenso anteriormente decretado. Por medio de la segunda de las referidas misivas, el señor Pierluisi separó al demandante Clemente González del puesto que ocupaba en la mencionada agencia. Mediante escrito de esa misma

---

[1] Causada dicha controversia, según se alega en la demanda, por supuestas presiones indebidas que pretende ejercer el señor Valentín en relación con el desempeño del cargo por parte del señor Clemente González.

fecha —9 de junio de 1983— la representación legal de la parte demandada solicitó nuevamente la desestimación de la demanda radicada, esta vez por el fundamento de que "la controversia planteada en este caso se ha convertido en académica".

El tribunal de instancia —Rubén Fernández Vázquez, Juez— acogió dicho planteamiento y mediante Sentencia de fecha 1ro de julio de 1983 ordenó "el archivo y sobreseimiento del caso advirtiéndole al demandante que el término para acudir a J.A.S.A.P. vence el próximo 9 de julio de 1983". No conforme, la parte demandante acudió ante este Tribunal.(²) Emitimos orden de mostrar causa; la parte demandada ha comparecido.(³) Estando en condiciones de resolver el recurso, procedemos a así hacerlo.(⁴)

I

La Constitución del Estado Libre Asociado de Puerto Rico dispone que la "dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. *No* podrá establecerse *discrimen alguno* por motivo de raza, color, sexo, nacimiento, origen o condición social, *ni ideas políticas* o religiosas. Tanto las leyes como el sistema de instrucción

---

(²) La parte demandante recurrió ante este Tribunal mediante la radicación de un recurso de *certiorari*. Consideramos el mismo como uno de revisión, al haberse acudido en tiempo. Véanse: *U.P.R.* v. *Merced Rosa*, 102 D.P.R. 512 (1974) y *R.A.M.* v. *Tribunal Superior*, 102 D.P.R. 270 (1974).

(³) La parte recurrida aduce, en apoyo de su posición a los efectos de que la sentencia dictada debe ser confirmada, tres fundamentos: que habiéndose dejado sin efecto el traslado que motivó la radicación de la demanda y en vista de que la parte demandante no solicitó enmendar sus alegaciones, el asunto se tornó en académico; que la jurisdicción primaria para entender en el asunto corresponde al foro administrativo; y que el recurrente ocupaba un puesto de "confianza política" del poder nominador, por lo que el mismo es de libre remoción.

(⁴) Debe tenerse presente que estamos revisando una sentencia de archivo, dictada como consecuencia de una moción de desestimación radicada por la parte demandada. Ello nos obliga, al igual que obligaba al tribunal de instancia, a aceptar como ciertas las alegaciones contenidas en la demanda. *Cervecería Corona, Inc.* v. *Tribunal Superior*, 99 D.P.R. 698, 701 (1971); *First Fed. Savs.* v. *Asoc. de Condómines*, 114 D.P.R. 426 (1983).

pública encarnarán estos principios de esencial igualdad humana". (Énfasis suplido.)(5)

Al discutirse el alcance de la cláusula constitucional citada en el seno de la Convención Constituyente se vertieron expresiones como las siguientes:

> El propósito de esta sección es fijar claramente como base consustancial de todo lo que sigue el principio de la dignidad del ser humano y, como consecuencia de ésta, la igualdad esencial de todas las personas dentro de nuestro sistema constitucional. La igualdad ante la ley queda por encima de accidentes o diferencias, bien tengan su origen en la naturaleza o en la cultura. Todo discrimen o privilegio contrario a esta esencial igualdad repugna al sistema jurídico puertorriqueño. En cuanto fuera menester nuestra organización legal queda robustecida por la presente disposición constitucional, a la vez que obligada a ensanchar sus disposiciones para dar plena realización a lo aquí dispuesto.

> . . . . . . . .

> *Ideas políticas o religiosas.* Se reconoce el derecho a tener ideas políticas y convicciones religiosas diferentes y en conflicto entre sí sin que esta diferencia o este conflicto milite en favor o en contra de ciudadano alguno en sus relaciones con el Estado. La libertad de pensamiento y la libertad de conciencia quedan aquí protegidas no sólo en su expresión sino también en las consecuencias de esta expresión.

> . . . . . . . .

> El más amplio reconocimiento del derecho a diferir y ser, no obstante, tratado con igualdad y protegido en esa diferencia por el poder público, es uno de los rasgos definidores de la democracia liberal.(6)

En el pasado hemos sido muy celosos y rigurosos en nuestra fundamental tarea de proteger la libertad ideológica contra gestiones represivas del Estado o algunos de sus funcionarios; hasta el presente, sin embargo, los planteamientos que se han levantado ante este Foro, en los que se

---

(5) Art. II, Sec. 1 de la Constitución.

(6) 4 *Diario de Sesiones de la Convención Constituyente* 2561-2562 (1951).

aduce discrimen político, siempre han tenido como escenario la rivalidad ideológica existente entre seguidores de distintos partidos políticos. Veánse, en general, *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972); *Ramos* v. *Srio. de Comercio*, 112 D.P.R. 514 (1982); *Navedo* v. *Municipio de Barceloneta*, 113 D.P.R. 421 (1982); *Olivieri Morales* v. *Pierluisi*, 114 D.P.R. 23 (1983).

■ El presente caso, sin embargo, presenta la variante de que, alegadamente, tanto el demandante Clemente González como el codemandado Pierluisi pertenecen a la misma agrupación política. ¿Puede configurarse discrimen dentro de las filas de un mismo partido político? Por los fundamentos que a continuación exponemos, resolvemos en la afirmativa.

■ El lenguaje del citado Art. II, Sec. 1 de nuestra Constitución es expreso, claro e inequívoco; prohíbe y protege a un ciudadano contra *toda* clase de discrimen. Como expresáramos en *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, ante, pág. 987, su "texto no permite distinción alguna. Quiere decir lo que dice". En lo referente a discrimen político, dicho lenguaje no condiciona la protección a evento alguno de circunstancias partidistas. Sencillamente garantiza el disfrute de la libertad ideológica a que tiene derecho todo individuo en una sociedad democrática como la nuestra.

■ Esa libertad ideológica de que hablamos, obviamente comprende la posición disidente que en un momento dado puede asumir el militante de un partido contra el pensamiento de la mayoría del partido en cuestión; en otras palabras, tanto puede diferir, ideológicamente hablando, de la autoridad nominadora un empleado público miembro de un partido distinto al que se halle en el poder, como aquel empleado que, a pesar de militar en el mismo partido que el poder nominador, en un momento dado se vea inmerso en "diferencias ideológicas" motivadas por cambios en la visión de dicho empleado o de la autoridad nominadora. No reconocer este alcance dentro del concepto discrimen político

representaría admitir una distinción vedada por nuestra Constitución.

## II

No está en controversia el hecho de que el cargo de director regional de la Corporación de Renovación Urbana y Vivienda que ocupaba el demandante Clemente González es uno de confianza. Basado en ello, la parte recurrida alega que el Secretario Pierluisi podía remover libremente al demandante del cargo que ocupaba; señala, además, que el demandante podía ser cesanteado por razón de que ya no gozaba de la "confianza política" del referido Secretario.

Como el "sistema de mérito es un sistema integral que cubre tanto el despido del empleado como su ingreso", *Guerra* v. *Srio. Servicios Sociales*, 113 D.P.R. 50, 53 (1982), está plenamente establecido que, como regla general, un empleado de confianza puede ser cesanteado sin formulación de cargos y sin vista previa. *Navedo* v. *Municipio de Barceloneta*, supra.

Hemos resuelto sin embargo —siguiendo la doctrina establecida por el honorable Tribunal Supremo de Estados Unidos en *Branti* v. *Finkel*, 445 U.S. 507, 515–516 (1980)[7]— que cuando un empleado de confianza que ha sido cesanteado *alega y presenta prueba* a los efectos de que su despido se debió a motivos políticos "recae sobre la autoridad nominadora (el gobierno) desfilar prueba demostrativa de que la *afiliación política particular* del empleado es *'requisito apropiado'* para el desempeño efectivo del cargo en cuestión, o sea, le corresponde establecer *la existencia de*

---

[7] En *Branti*, supra, el Supremo federal expresó que "si la Primera Enmienda protege a un empleado público de despido por lo que ha hablado, también debe protegerlo de separación basada *en sus creencias*. Bajo esta línea de análisis, a menos que el gobierno pueda demostrar un *'interés superior de importancia vital'* que requiera que *las creencias privadas* de la persona coincidan con la autoridad nominadora, sus *creencias* no pueden constituir la razón única para privarlo de continuidad en el empleo". (Énfasis suplido.) (Citas omitidas.)

*intereses gubernamentales* que son de importancia y jerarquía superior a los derechos del empleado bajo la Primera Enmienda". (Énfasis suplido.) *Ramos* v. *Srio. de Comercio*, 112 D.P.R. 514, 516 (1982).

■ Distinto a la situación de hechos presente en el citado caso de *Ramos*, en el caso de autos nos enfrentamos con una situación en que tanto el empleado de confianza que ha sido cesanteado como el poder nominador, alegadamente, pertenecen a un mismo partido político. No obstante ello, ¿debe concedérsele a la autoridad nominadora en casos como el presente la oportunidad de presentar la prueba a la que se hace referencia en el caso de *Ramos*? Resolvemos en la afirmativa.

No tenemos la menor duda de que existen en el Gobierno de Puerto Rico innumerables puestos de confianza en relación con los cuales intereses gubernamentales de vital importancia exigen que las personas que desempeñan esos cargos no sólo estén afiliados al mismo partido político al que pertenece la autoridad nominadora, sino que requieren que las actitudes, creencias, intereses y objetivos de esos empleados coincidan con aquellos de la autoridad nominadora. Se requiere que ello sea así debido a que, desafortunadamente, siempre existe la posibilidad de que un empleado desafecto —aun cuando nominalmente pertenezca al mismo partido político al que pertenece el poder nominador— puede obstaculizar, al igual que un empleado de distinto partido, de tal forma la labor gubernamental como para poner en peligro la implantación de todo un programa de gobierno.

## III

■ Los restantes dos planteamientos de la parte recurrida, a saber, que la jurisdicción primaria para entender en el presente asunto corresponde al foro administrativo y que el caso se tornó en académico, son inmeritorios. En cuanto al primero de ellos, basta decir que la demanda

radicada fue jurada y que en la misma se hace un planteamiento constitucional claro basado el mismo en hechos precisos que en nuestra opinión justifican la preterición del cauce administrativo. *Pierson Muller I* v. *Feijoó*, 106 D.P.R. 838 (1978); *First Fed. Savs.* v. *Asoc. de Condómines*, 114 D.P.R. 426 (1983).

▮▮▮▮ En relación con el segundo planteamiento esgrimido por la parte recurrida, debemos tener siempre presente que las Reglas de Procedimiento Civil deben ser interpretadas de modo tal que garanticen una solución justa, rápida y económica de todo el proceso. *A.T.P.R.* v. *Padín Santiago*, 104 D.P.R. 426 (1975). En las alegaciones de su demanda, la parte demandante aludió constantemente al hecho de que mediante el traslado decretado lo que se pretendía era lograr su despido. De todas formas, nada se adelanta con desestimar la presente acción obligando así a la parte demandante a radicar una nueva demanda. No procede la desestimación definitiva de una demanda por dejar de exponer la misma hechos que justifiquen la concesión de un remedio si dicha demanda es susceptible de ser enmendada. *Figueroa* v. *Tribunal Superior*, 88 D.P.R. 122 (1963). No habiéndose radicado la contestación de la demanda, al amparo de las disposiciones de la Regla 13.1 de las de Procedimiento Civil de 1979, la parte recurrente, como cuestión de derecho, puede enmendar la misma.

Por las razones antes expresadas, *se expide el auto, se dicta sentencia en que se revoca la del honorable Tribunal Superior de Puerto Rico, Sala de Mayagüez, en el Caso Civil Núm. CS-83-472 y se devuelve el caso al referido tribunal para la continuación de los procedimientos compatibles con lo aquí resuelto.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión. Los Jueces Asociados Señores Torres Rigual y Díaz Cruz no intervinieron.