# 2000 DTA 107

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**

EDGAR R. TOLEDO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR JUANITA DIAZ HERNANDEZ; MARILYN CRUZ LAUREANO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR JOSE A. JIMENEZ ROSA, Y SANDRA GONZALEZ DIAZ
Apelantes

v.

HONORABLE RAMON GARCIA CARABALLO EN SU CARACTER PERSONAL Y COMO ALCALDE DEL MUNICIPIO DE GURABO
Apelados

Núm. KLAN-99-00844

San Juan, Puerto Rico, a 29 de febrero de 2000

Panel integrado por su presidenta, la Juez Rivera de Martínez
y los Jueces Colón Birriel y Soler Aquino

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Edgar E. Toledo y la Sociedad de Gananciales compuesta con Juanita Díaz Hernández; Marilyn Cruz Laureano y la Sociedad de Gananciales compuesta con José A. Jiménez Rosa y Sandra González Díaz (en adelante los *"apelantes"*) recurren de una *"Sentencia"* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 7 de mayo de 1999, notificada de su archivo en autos el 8 de junio de 1999. Mediante el dictamen aludido se declaró *"Ha Lugar"* una moción de sentencia sumaria presentada por el Hon. Ramón García Caraballo (en adelante *"García Caraballo"* o el *"apelado"*), en su carácter personal y como Alcalde del Municipio de Gurabo (en adelante los *"apelados"*) En su consecuencia, se desestimó la demanda presentada por los apelantes. Estos solicitaron reconsideración, oportunamente, siendo declarada *"No Ha Lugar"* el 22 de junio de 1999.

Por su parte, los apelados se opusieron a la apelación presentada por los apelantes, el 9 de agosto de 1999.

Con el beneficio de la comparecencia de las partes, estamos en condiciones de resolver, no sin antes exponer un breve resumen del trasfondo fáctico y procesal que dio origen al recurso. Veamos.

### II

Surge de los escritos que Edgar R. Toledo, Marilyn Cruz Laureano y Sandra González Díaz se desempeñaron respectivamente, hasta septiembre de 1992, como Vice Alcalde, Secretaria del Alcalde, y Directora de Personal del Municipio de Gurabo (en adelante el *"Municipio"*). Estos eran miembros del Partido Popular Democrático (en adelante el *"P.P.D."*) y empleados de confianza del codemandado García Caraballo, quien fungía como Alcalde del Municipio.

Previo a las elecciones generales celebradas en noviembre de 1992, varias personas militantes en el P.P.D. expresaron su interés en competir como candidatos a la alcaldía del Municipio por esa colectividad política. Entre esas personas se encontraba Carmen A. Flores Iglesias, quien durante el proceso llevado a cabo para determinar las candidaturas, fue respaldada abiertamente como pre-candidata por García Caraballo. Los apelantes se negaron a respaldar o a endosar a la mencionada pre-candidata.

Como primera causa de acción, los demandantes-apelantes, Edgar R. Toledo (en adelante *"Toledo"*), Marilyn Cruz Laureano (en adelante *"Cruz Laureano"*) y Sandra González Díaz (en adelante *"González Díaz"*), alegaron que García Caraballo los relevó sumariamente de sus respectivas posiciones *"por razón de su negativa a respaldar públicamente a la pre-candidata Flores Iglesias."* Alegaron que bajo esas circunstancias

el despido fue contrario a derecho, por razón de que el elemento estatutario o constitucional de *"confianza"* no incluia actuaciones arbitrarias, ni la participación o conspiración para violar la ley. Que tratándose de empleados de confianza sus despidos violaban sus derechos a la libre expresión, libre asociación, debido procedimiento de ley e igual protección de ley, que les garantizaba las constituciones de Estados Unidos y la de Puerto Rico. Toledo, Cruz Laureano y sus respectivas sociedades de gananciales reclamaron $106,750.00 y $100,682.00, respectivamente. Por su parte, González Díaz reclamó $104,925.00.

Como segunda causa de acción, los apelantes expresaron que, a raíz de sus despidos, García Caraballo justificó públicamente su decisión, alegando mala conducta, insubordinación y deslealtad en el desempeño de sus cargos. Esas falsas imputaciones, provocaron el que muchas personas le profirieran insultos y vejámenes, lo que les causó consternación y humillaciones. Por esa alegada negligencia, Toledo, Cruz Laureano y sus respectivas sociedades de gananciales reclamaron daños adicionales ascendentes a $100,000.00, cada uno. Igual cantidad reclamó González Díaz.

Como tercera causa de acción, Cruz Laureano alegó que García Caraballo le redujo un aumento salarial de $100.00 mensuales, aprobado por el Municipio en marzo de 1992, a la cantidad de $50.00 mensuales. ▇ Alegó que, de no ser empleada de confianza, tenía derecho a recibir paga por 75 horas en exceso de 40 a la semana, ascendente a $758.25.

Como cuarta causa de acción, Cruz Laureano alegó que, no obstante serle asignado (efectivo al mes de febrero de 1991) un sueldo de $1,100.00 mensuales, recibía pagos a razón de $1,050.00. Es decir, se le estuvo remunerando $50.00 de menos, por lo cual reclamó $2,100.00 por ese concepto.

A consecuencia de lo antes mencionado, el 31 de diciembre de 1992, los apelantes presentaron ante el antiguo Tribunal Superior, Sala de Caguas, una *"Demanda"* juramentada, Sobre Acción Civil (Despido, Reclamación de Salarios) contra los apelados. Alegaron que sus despidos obedecieron a discrimen político. Solicitaron se dictara sentencia mediante la cual se le ordenara a los apelados pagarles los salarios dejados de percibir, daños y perjuicios, intereses y una suma razonable por concepto de honorarios de abogado.

Por su parte, como hemos mencionado, la apelante Marilyn Cruz Laureano alegó, además, que a los empleados de confianza del Municipio se les concedió un aumento de sueldo de $100.00 mensuales, mientras que a ella sólo le concedieron $50.00. Adujo que ello se debió a las mismas razones por las cuales fue despedida. Los apelantes reclamaron la suma de total de $615,596.25 por salarios y daños y perjuicios. ▇

Tras otros incidentes, y el uso de los mecanismos de descubrimiento de prueba, el 18 de agosto de 1998, el Municipio presentó un escrito intitulado *"Moción en Solicitud de Sentencia Sumaria"* acompañándolo con varios *"Exhibits"*. ▇ Alegó que los apelantes eran empleados de confianza del Municipio y, por lo tanto, de libre remoción. En cuanto al aumento de $50.00 reclamado por Cruz Laureano, el Municipio alegó que fue un aumento por merito y no uno regular. Solicitó que por no haber controversias en cuanto a los hechos que pasaremos a transcribir, lo único que restaba era la aplicación del derecho:

*"1. Los codemandantes Edgar R. Toledo, Marilyn Cruz Laureano y Sandra González Díaz ocuparon los puestos de confianza de Vice-Alcalde, Secretaria del Alcalde y Directora de Personal respectivamente bajo la administración del ex-alcalde Ramón García Caraballo.*

*2. Que el ex-alcalde Ramón García Caraballo fue electo y sirvió como alcalde del Municipio de Gurabo por el Partido Popular Democrático y para todo el período pertinente a la demanda fue miembro de dicho partido.*

*3. Que previo a las elecciones de 1992, distintas personas militantes del Partido Popular Democrático expresaron su interés en competir por la candidatura de dicho partido para la alcaldía del Municipio de*

*Gurabo.*

4. *Los codemandantes fueron cesanteados de sus puestos de confianza por el ex-alcalde Ramón García Caraballo.*

5. *Que la codemandada Marilyn Cruz Laureano, una vez cesanteada de su puesto de confianza, fue reubicada al puesto regular que ocupaba.*

6. *Que la codemandante Marilyn Cruz Laureano recibió un aumento de cincuenta dólares ($50.00). Que éste fue un aumento de paso y no un aumento regular.*

7. *Que no existe ordenanza ni orden ejecutiva alguna a los efectos de aprobar el aumento de cien dólares ($100.00) que la codemandante Marilyn Cruz Laureano alega se aprobó para los empleados de confianza y ella no recibió."*

El 28 de agosto de 1998, se celebró una Conferencia Con Antelación al Juicio, concediéndosele veinte (20) días a los apelantes para oponerse a la moción de sentencia sumaria presentada por el Municipio de fecha 18 de agosto de 1998. En esa ocasión, García Caraballo se unió a la moción de sentencia sumaria presentada por el Municipio. ■

El 20 de noviembre de 1998, notificada el 23 de noviembre, previo a examinar una *"Moción en Cumplimiento de Orden"* presentada por los Lcdos. Richard W. Markus y Belinda Lee Toro Palacios, anteriores representantes de los apelantes, el foro de instancia emitió una *"Orden"* que copiada literalmente lee como sigue:

*"Enterado. Informen los demandantes en veinte (20) días su nueva representación legal o se dictará sentencia archivando este caso."* ■

El 21 de diciembre de 1998, se le concedió, una vez más a los apelantes, hasta el 26 de enero de 1999 para comparecer con su nueva representación legal. Se les apercibió del archivo del caso de no cumplirse con lo ordenado. ■

Mediante *"Orden"* de 27 de enero de 1999, se aceptó la renuncia de la representación legal de los apelantes. Se les concedió hasta el primero de marzo de 1999 para informar su nueva representación legal, apercibiéndoles del archivo del caso de no cumplir con lo ordenado. ■

El 30 de enero de 1999, los apelantes anunciaron su nueva representación legal, el Lcdo. Carlos M. Jiménez Negrón. Este solicitó un término adicional de treinta (30) días para contestar la solicitud de sentencia sumaria de los apelados. ■

El 25 de febrero de 1999, se aceptó la nueva representación legal de los demandantes apelantes y se les concedió el término solicitado (treinta (30) días para oponerse a la solicitud de sentencia sumaria). ■

El 17 de mayo de 1999, (75) días después de que el foro de instancia le concediera a los apelantes (30) días adicionales para oponerse a la solicitud de sentencia sumaria y (210) días después de haberse radicado dicha solicitud, éstos presentaron su oposición. ■

El 7 de mayo de 1999, notificada de su archivo en autos el 8 de junio, se declaró *"Ha Lugar"* la solicitud de sentencia sumaria de los apelados. ■ El 17 de mayo de 1999, los apelantes presentaron *"Moción en Oposición a Sentencia Sumaria"*. ■ Mediante *"Orden"* del 21 de junio de 1999, se declaró *"No Ha Lugar"* a la reconsideración solicitada. ■

Inconforme, los apelantes le imputan error al foro de instancia al declarar *"Ha Lugar"* la moción de sentencia sumaria del Municipio y *"No Ha Lugar"* la presentada por ellos, negándoles la protección que nuestro ordenamiento jurídico le concede a los empleados de confianza, víctimas de discrimen político.

## III

La Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, en sus artículos 12.003 y 12.004, 21 L.P.R.A. secs. 4553 y 4554, disponen, respectivamente, en lo pertinente:

*"§ 4553. Composición*

*El servicio público municipal se compondrá del servicio de carrera, el servicio de confianza y el servicio irregular.*

*(a) El servicio de confianza estará constituido por puestos cuyos incumbentes intervengan o colaboren sustancialmente en el proceso de formulación de política pública, asesoren directamente o presten servicios directos al Alcalde o al Presidente de la Asamblea.*

*§ 4554. Estado legal de los empleados*

*Los empleados municipales serán clasificados como de confianza, probatorios de carrera, regulares, transitorios e irregulares.*

*(a) Empleados de confianza. Los empleados de confianza serán libres de selección y remoción y deberán reunir aquellos requisitos de preparación académica, experiencia, tomar y aprobar los cursos del Programa de Capacitación y Educación Continuada Compulsoria, según se haya establecido por la Oficina del Comisionado de Asuntos Municipales para el puesto o unidad administrativa correspondiente y de otra naturaleza que dispone este capítulo y que el Alcalde o el Presidente de la Asamblea, en sus respectivas ramas del Gobierno Municipal, consideren imprescindibles para el adecuado desempeño de sus funciones.*

*Serán, además, de libre remoción, excepto aquellos que sólo pueden ser removidos por las causas establecidas en ley y aquellos cuyo nombramiento sea por término fijado por ley.*

*Para poder definir quién es un empleado de confianza, hay que atender la naturaleza de sus funciones y sus responsabilidades. Un empleado de confianza, según expuesto en Colón Pérez v. Alcalde Mun. de Ceiba, 112 D.P.R. 740, 744 (1982) :*

*"a) Interviene o colabora sustancialmente en la formulación de política pública; o*

*b) asesora a la autoridad nominadora; o*

*c) presta servicios directos a la autoridad nominadora."*

Por otro lado, los empleados de confianza están sujetos al dictamen de la autoridad nominadora. Esto es así como cuestión de una sana, correcta y bien establecida norma en todos los sistemas científicos de administración de personal en cuanto a los cargos de confianza se refiere. *Díaz González v. Tribunal Superior,* 102 D.P.R. 195, 197 (1974).

El interés público en la organización del gobierno y en la eficiencia de su administración, justifican la libre selección y fácil remoción de empleados de confianza. *Branti v. Finkel,* 445 U.S. 507, 517 (1979); *Díaz González v. Tribunal Superior, supra.*

Otra característica y la esencia del concepto de un empleado de confianza es que éste debe tener una filosofía de gobierno y unas actitudes frente a los problemas del país que sean compatibles y no contrarias a las del gobierno electo por el pueblo y bajo la cual sirven. Además de los cargos electivos, el personal superior del aparato administrativo del gobierno (jefes de los grandes departamentos de la rama ejecutiva; ayudantes y asesores del primer ejecutivo, etc.) aun cuando deben reunir capacidades técnicas satisfactorias, no son designados exclusivamente en consideración a ellas, sino que su designación sigue siendo discrecional y sobre la base de confianza pública. Esto se entiende porque es necesario que entre ese personal superior de la estructura administrativa y las autoridades supremas, elegidas por sufragio popular, haya compenetración en cuanto a los programas importantes de gobierno. Esto, desde luego, no es aplicable al personal subalterno permanente, que no formula política pública y que debe estar comprendido en el servicio civil o servicio de mérito. *Soto v. Alcalde Municipio de Bayamón,* 99 D.P.R. 415, 421-422 (1970).

Es importante que la autoridad nominadora tenga la libertad de criterio para seleccionar y remover ciertos empleados, denominados empleados de confianza, basados en un criterio de visión política y que de alguna forma sirven para adelantar la política pública de la autoridad nominadora.

En *Díaz González, supra,* a la pág. 210, nuestro Tribunal Supremo expresó:

*"Debe ser claro que los funcionarios normativos (policy making) del ejecutivo y de la mayoría legislativa deben tener una filosofía de gobierno y unas actitudes frente a los problemas del país que deben ser compatibles, y no contrarias, a la del gobierno electo por el pueblo y bajo el cual sirven. Eso da vigencia al mandato popular, pues hace posible realizar el programa de gobierno que el electorado favoreció en las urnas. Lo contrario sería frustrar dicho mandato popular. La Ley de Personal, reconociendo esa realidad, sabiamente coloca a esas posiciones en los servicios Exento y Sin Oposición. También coloca en esos servicios mencionados a los cargos o empleos de confianza, como lo son usualmente el del ayudante de un ejecutivo exento o el de su secretaria personal. Estos funcionarios normativos y esos empleos o cargos de confianza constituyen un reducido por ciento de todo el personal del gobierno.*

*Entre los elementos que la autoridad nominadora puede evaluar para la selección o remoción de empleados de confianza está su afiliación política. Colón Pérez v. Alcalde Mun. de Ceiba, supra.*

*Un empleado de confianza, a diferencia de uno de carrera, no tiene un derecho adquirido o interés propietario en el desempeño permanente de su cargo. Pierson Muller v. Feijoó, 108 D.P.R. 261 (1978). Para ocupar el puesto de vice-alcalde, la afiliación política, actitud, creencias, intereses y objetivos de la persona nombrada deben coincidir con los de la autoridad nominadora. Esos son requisitos imprescindibles para el descargo de ese puesto.*

*De otro modo, el Tribunal de Circuito Federal para el Primer Circuito, en Vázquez Ríos v. Hernández Colón, 819 F. 2d 319 (1er. Cir. 1987), expresó que la exclusión de la protección de las disposiciones sobre discrimen incluyen al chofer, la secretaria y los asesores y ayudantes designados a trabajar directamente con el gobernador (o por analogía, el alcalde), ya que su posición es una apropiada para lo cual no le cobija la protección sobre discrimen político. En Rodríguez v. Mun. de Fajardo, 115 D.P.R. 675 (1974), nuestro Tribunal Supremo, al evaluar las funciones del Secretario Municipal, determinó que éstas requieren una afiliación política particular y no está protegido por las disposiciones sobre discrimen."*

Por último, en *Franco v. Mun. de Cidra,* 113 D.P.R. 260, 263 (1982), nuestro Tribunal Supremo determinó que el puesto de Director de Personal del Municipio es uno de confianza. En cuanto a ello, expresó:

*"Se desempeñará como delegada del alcalde, con la responsabilidad primordial de asesorar y responderle directamente en cuanto al personal municipal, en todas sus dimensiones. En consecuencia, su cargo ipso jure era de confianza."*

En resumen, no tenemos la menor duda en cuanto a que los puestos ocupados por los demandantes-apelantes eran de confianza y, por lo tanto, de libre remoción.

Por otro lado, el Gobierno no puede discriminar en contra de los empleados de confianza, por razón de sus preferencias o ideas políticas, aun dentro del mismo partido político, por lo que no se le puede despedir por tales motivaciones a menos que, en el primer caso, sea requisito apropiado de su puesto la afiliación política. *McCrillis v. Autoridad de Navieras,* 123 D.P.R. 113 (1989); *Clemente v. Depto. de la Vivienda,* 114 D.P.R. 763 (1983); *Ramos v. Secretario de Barceloneta,* 113 D.P.R. 421 (1982); *Ramos v. Secretario de Comercio,* 112 D.P.R. 514 (1982).

Por su parte, la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza a un tribunal a dictar sentencia sumaria, cuando de los documentos y declaraciones sometidas en apoyo de la moción quedara demostrado que no existe controversia real sustancial en cuanto a ningún hecho material y que sólo resta aplicar el derecho. La sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. *Guerrido García v. Universidad Central de Bayamón,* Op. de 30 de mayo de 1994, **97 J.T.S. 79**, a la pág. 1104; *P.F.Z. Properties Inc. v. General Accident Insurance Co.,* Op. de 7 de septiembre de 1994, **94 J.T.S. 116**, a la pág. 125; *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.,* 128 D.P.R. 538 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 279-280 (1990); *Corp. of Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720-721 (1986); *Nassar Rizek v. Salvador O. Hernández,* 123 D.P.R. 360 (1989).

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, también autoriza al tribunal a dictar sentencia sumaria cuando *"no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente"*. Véase, en general, *Rodríguez v. Secretario de Hacienda,* Op. de 1 de marzo de 1994, **94 J.T.S. 20**, a la pág. 11,550; *Corp. Presiding Bishop CJC of LDS v. Purcell, supra; Tello Rivera v. Eastern Air Lines,* 119 D.P.R. 83, 86 (1987).

El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. *Hurtado Latre v. Osuna y Frese,* Op. de 30 de junio de 1995, **95 J.T.S. 98**, a la pág. 1,065; *Pilot Life Insurance Company v. Crespo Martínez,* Op. de 13 de julio de 1994, **94 J.T.S. 104**, a las págs. 20-21.

No obstante, el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa, rápida y económica del litigio. Por tanto, si existen dudas sobre la existencia de una controversia de hechos, de las alegaciones respondientes o de la procedencia de la moción, éstas deben resolverse en contra de la parte que solicita la sentencia sumaria. *Bonilla Medina v. Partido Nuevo Progresista,* Op. de 13 de marzo de 1996, **96 J.T.S. 33**, a la pág. 790; *Rivera Santana v. Superior Packing, Inc.,* 132 D.P.R. 115, 132-133 (1992); *PFZ Properties, Inc. v. General Accident Insurance Company, P.R. Ltd., supra; Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos,* Op. de 15 de diciembre de 1997, **97 J.T.S. 147**, a la pág. 400. En tales casos, los jueces se ven impedidos de pasar juicio sobre la credibilidad de los documentos que tienen ante sí, pues ese no es el momento para ello. *Meléndez v. Pesquera,* 112 D.P.R. 86, 89 (1982); *Rodríguez Meléndez v. Supermercado Amigo,* 126 D.P.R. 117, 134 (1990); *Rivera Santana v. Superior Packing, supra.* El procedimiento sumario no permite que el tribunal dirima cuestiones de credibilidad. *Col. Ing. y Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735, 781 (1992).

Una vez que la moción de sentencia sumaria ha sido presentada y se sostiene en la forma provista por la Regla 36 de las de Procedimiento Civil, *supra,* la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. No puede un

demandante simplemente cruzarse de brazos y descansar en meras alegaciones infundadas, y esperar así derrotar una moción de sentencia sumaria debidamente fundamentada y apoyada en sus propias admisiones. *Mercado Vega v. U.P.R.,* 128 D.P.R. 273 (1991). De hacerlo, debe dictarse sentencia sumaria en su contra, si procediera en derecho. Regla 36.5 de las de Procedimiento Civil, *supra*; *PFZ Properties v. General Accident Insurance Corp., supra.*

La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Guerrido García v. Universidad Central de Bayamón, supra,* a la pág. 1,104; *J.A.D.M. v. Centro Com. Plaza Carolina,* 132 D.P.R. 785, 802-803 (1993).

Por otro lado, al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal, *Medina Morales v. Merck Sharp & Dhome,* Op. del 7 de abril de 1994, **94 J. T.S. 52,** a la pág. 11786; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. Sin embargo, el tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho, no procede. *Corp. Presiding Bishop CJC of LDS v. Purcell, supra,* a la pág. 702; *PFZ Properties, Inc. v. General Accident, supra.*

Conforme expresara el Municipio en su solicitud de sentencia sumaria, para los propósitos de esa solicitud, hay siete (7) hechos sobre los que los apelantes no presentaron oposición alguna, *supra*. Sin embargo, aun tomando por ciertas dichas alegaciones, el Municipio falló en controvertir el hecho básico de la reclamación presentada por los apelantes ██

*"4. Previo a las elecciones generales celebradas en noviembre de 1992, distintas personas militantes en el PPD expresaron su interés en competir por la candidatura de dicho partido a la Alcaldía de Gurabo.*

*5. Entre las personas que optaron por aspirar a dicha candidatura estaba la eventual candidata del PPD Sra. Carmen A. Flores Iglesias.*

*6. Durante el proceso llevado a cabo para determinar las referidas candidaturas, el demandado García Caraballo respaldó abiertamente a la señora Flores Iglesias mientras que los demandantes se negaron a endosar o respaldar a la mencionada pre-candidata.*

*"PRIMERA CAUSA DE ACCION*

*7. Por razón de su negativa a respaldar públicamente a la pre-candidata Flores Iglesias, los demandantes Edgar R. Toledo, Marilyn Cruz Laureano y Sandra González Díaz, fueron relevados sumariamente de sus respectivas posiciones como Vice Alcalde, Secretaria del Alcalde y Directora de Personal del Municipio de Gurabo."*

Como expusiéramos anteriormente, no hay duda respecto a que *"[l]os codemandados fueron cesanteados de sus puestos de confianza por el ex-alcalde Ramón García Caraballo."* ██ Sin embargo, los apelados dejaron del todo descubierto (en su solicitud de sentencia sumaria) cuáles fueron las razones que a bien tuvo el Municipio para proceder con el despido; es decir, si la razón para el despido sumario de los apelantes fue su negativa a respaldar públicamente a la pre-candidata a alcaldeza, la que era respaldada por el apelado. A nuestro juicio, esos hechos están todavía en controversia, por lo que no se puede disponer del caso sumariamente.

A tales efectos, nuestro Tribunal Supremo expresó en *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.,* 128

D.P.R. 538, 549 (1991), que:

*"Como regla general, para derrotar una solicitud de sentencia, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Si se cruza de brazos corre el riesgo de que le dicten sentencia en su contra sin la celebración de un juicio en su fondo. Sin embargo, el solo hecho de no haberse opuesto con evidencia que controvierta la presentada por el promovente no implica que necesariamente proceda la sentencia sumaria o que el promovente tenga derecho a que se dicte a su favor." (Énfasis suplido.) Corp. Presiding Bishop CJC of LDS v. Purcell, supra, pág. 71.* Quiere esto decir que los tribunales de primera instancia en cada proceso concederán *"el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones ..."*. Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

La determinación de disponer de un litigio mediante este mecanismo es un asunto inminentemente discrecional del Tribunal de Primera Instancia. Sólo en los casos del abuso de la discreción conferida es que procede nuestra intervención, respecto a las determinaciones de dicho foro. *PFZ Properties v. General Accident Insurance Corp., supra.* Respetuosamente, entendemos que el foro apelado no hizo buen uso de su discreción, toda vez que decretó la procedencia de una solicitud que no derrotó adecuadamente los planteamientos principales y hechos sustanciales expuestos en la demanda incoada por los apelantes.

Sin la celebración de un juicio en sus méritos, difícilmente se podría tener la veracidad de las circunstancias que motivaron el despido de los apelantes. Estaríamos avalando el que se les despojara a éstos de sus derechos, sin la oportunidad de darle su día en corte, en violación al debido procedimiento de ley.

En el presente caso, los apelantes alegaron que su despido fue motivado por discrimen político. Se les debe permitir a éstos presentar prueba, a los efectos de sustentar sus alegaciones. Luego de presentada, quedaría transferido el peso de la prueba a la autoridad nominadora, el Municipio, para así refutarla, de tener la prueba para ello.

En conclusión, es evidente que existe una controversia real en cuanto a los hechos que dieron lugar al despido de los apelantes. Por consiguiente, el foro recurrido no se encontraba en posición de dictar la sentencia sumaria mediante la cual dispuso de la reclamación ante su consideración.

En mérito a lo expuesto, revocamos la sentencia del 7 de mayo de 1999, del Tribunal de Primera Instancia, Sala Superior de Caguas, mediante la cual se declaró Ha Lugar la moción de sentencia sumaria de los apelados. En su consecuencia, se devuelve el caso a dicho foro para la continuación de los procedimientos.

Así lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General