ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **MARÍA GUARDARRAMA** <br> DEMANDANTE(S)-APELANTE(S) <br><br><br> V. <br><br><br> **ACE AMERICAN INSURANCE COMPANY Y OTROS** <br> DEMANDADA(S)-APELADA(S) | **KLAN202200851** | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de **CAGUAS** <br><br> Caso Núm. **GR2018CV00291 (704)** <br><br> Sobre: Incumplimiento Contractual, Daños Contractuales, Incumplimiento Aseguradores |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Barresi Ramos, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 30 de junio de 2023.

Comparece ante este Tribunal de Apelaciones, la señora **María M. Guardarrama Suárez** (señora **Guardarrama Suárez**) mediante *Apelación* instada el 24 de octubre de 2022. En su recurso, nos solicita que revisemos la *Sentencia* pronunciada el 15 de julio de 2020 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI).[1] Mediante dicha decisión, entre otras cosas, se declaró ha lugar la *Moción de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil* presentada el 31 de octubre de 2019 por **MAPFRE PAN AMERICAN Insurance Company** (**MAPFRE PANAMERICAN**) y se desestimó, con perjuicio, la *Demanda*.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---
[1] Esta determinación judicial fue notificada y archivada en autos el 17 de julio de 2020. Véase Apéndice de la *Apelación,* págs. 78- 83.

**I.**

El día 20 de septiembre de 2018, la señora **Guardarrama Suárez** entabló *Demanda* sobre incumplimiento de contrato y daños contractuales en contra de ACE Insurance Company y otros.[2] En esta causa de acción, entre otras cosas, alegó que su residencia sita en la Urbanización Veredas en Gurabo, Puerto Rico, y bienes asegurados sufrieron daños causados por el Huracán María.

Posteriormente, el 15 de enero de 2019, se presentó *Demanda Enmendada*, a los efectos de dejar como única parte demandada a la aseguradora **MAPFRE PRAICO Insurance Company** (**MAPFRE PRAICO**) y se entendiera como desistida la reclamación, sin perjuicio, contra las otras compañías inicialmente demandadas.[3]

Más tarde, el 21 de marzo de 2019, **MAPFRE PRAICO** presentó su *Moción de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil* mediante la cual, argumentó que no fue la entidad que expidió la póliza sujeta a la reclamación.[4] Adujo que la señora **Guardarrama Suárez** no tenía una causa de acción en su contra, toda vez que **MAPFRE PANAMERICAN** era una entidad jurídica independiente y con personalidad jurídica individual.

El 6 de junio de 2019, la señora **Guardarrama Suárez** presentó su *Segunda Demanda Enmendada* para incluir a **MAPFRE PANAMERICAN** como parte codemandada.[5] En su escrito, expuso que las aseguradoras emitieron una póliza de seguros a su favor, la cual era efectiva al momento del paso del Huracán María por Puerto Rico. Además, arguyó que la aludida póliza cubría los daños causados por dicho fenómeno a sus bienes personales. Argumentó que pagó todas las deudas relacionadas con la cubierta concernida e incurrió en gastos significativos para reparar los aludidos daños. A su vez, aseguró que las aseguradoras en cuestión, pagaron una cantidad menor por los mismos. Reclamó una cantidad de $83,896.56 por

---

[2] Véase Apéndice de la *Apelación,* págs. 1- 8.
[3] *Íd.*, págs. 9- 17.
[4] *Íd.*, págs. 23- 33. Su documento fue acompañado de los siguientes documentos: 1) Emplazamiento a **MAPFRE PRAICO**; y 2) la Póliza Multilíneal Personal a favor de la señora **Guardarrama Suárez** y expedida por **MAPFRE PANAMERICAN**.
[5] *Íd.*, págs. 35- 40.

pérdidas a la propiedad asegurada, y señaló que las compañías actuaron de manera dolosa, temeraria y de mala fe contractual al negarse a pagar sus reclamaciones.

Ese mismo día, la señora **Guardarrama Suárez** también presentó su *Oposición a Moción de Desestimación.*[6] Por medio de esta, alegó que **MAPFRE PRAICO** no colocó en posición al tribunal primario para concluir definitivamente que la referida compañía de seguros era una entidad jurídica distinta y separada de **MAPFRE PANAMERICAN**. Además, argumentó que **MAPFRE PRAICO** no incluyó con su moción de desestimación algún documento oficial que acreditara que no tuviese una póliza vigente sobre la propiedad afectada. Invitó al foro primario a tomar conocimiento de que las aseguradoras concernidas compartían la misma dirección de las oficinas centrales; los mismos procedimientos; y agente residente; así como el mismo acceso a su expediente. A su vez, adujo que **MAPFRE PRAICO** tampoco explicó cómo tuvo acceso a la información contenida en dicho récord. Solicitó al foro *a quo* que declarara *No Ha Lugar* la desestimación de la demanda, entre otras cosas.

Unos días después, el 10 de junio de 2019, **MAPFRE PRAICO** presentó su *Réplica a "Oposición a Moción de Desestimación"* en la cual aclaró que su escrito sobre desestimación estaba acompañado de copia de la declaración de la póliza a favor de la señora **Guardarrama Suárez** (número 3777751607223) y que ésta no incluyó en su oposición, evidencia alguna que refutara dicho documento o comprobara la existencia de una relación contractual.[7]

_____

[6] Véase Apéndice de la *Apelación,* págs. 43- 50. Junto con su oposición incluyó una declaración jurada del emplazador, señor José A. Tejeda Gil.

[7] *Íd.*, págs. 51- 57. Surge de los documentos que obran en el expediente ante nos, que la vigencia de la póliza en cuestión era desde el 23 de febrero de 2017 hasta el 23 de febrero de 2018. Como es sabido, durante la validez de dicha cubierta, el 20 de septiembre de 2017, el Huracán María azotó y ocasionó graves pérdidas en todo Puerto Rico. Por lo cual, conviene destacar algunas cláusulas del mencionado documento, relacionadas con los deberes de la parte asegurada después de una pérdida. En particular, en las **Condiciones** se establecen:
   4. **Sus Deberes Después de una Pérdida**. En caso de pérdidas a la propiedad cubierta, usted debe asegurarse de que se cumpla lo siguiente:
      a. **Notificarnos** a nosotros o a nuestro agente oportunamente.
      b. [...]
      c. **preparar un inventario** de la propiedad personal dañada que indique la cantidad, la descripción, el valor real en efectivo y la cantidad de pérdida. **Acompañar todas las facturas, los recibos y los documentos relacionados que justifiquen las cifras del inventario**;

Así las cosas, el 3 de julio de 2019, el foro primario dictaminó *Sentencia Parcial* en la cual acogió la solicitud de desestimación y desestimó, con perjuicio, la causa de acción presentada contra **MAPFRE PRAICO** por dejar de exponer una reclamación que justifique la concesión de un remedio en su contra.[8]

El 31 de octubre de 2019, **MAPFRE PANAMERICAN** presentó su *Moción de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil.*[9] En su escrito, planteó que la señora **Guardarrama Suárez** incumplió con su obligación contractual de evidenciar su pérdida. Esto es, en conformidad con la póliza, debió presentar un inventario, debidamente firmado y juramentado, de la propiedad afectada que indicara la descripción, el valor real y la cantidad de la pérdida, acompañada de todas las facturas, recibos y documentos que justificaran las cifras del inventario ante su compañía aseguradora. Argumentó que la señora **Guardarrama Suárez** le debió presentar la evidencia aludida para proceder a ajustar el daño, previo a la presentación de su demanda.

El 15 de julio de 2020, la señora **Guardarrama Suárez** presentó su *Escrito en Cumplimiento de Orden.*[10] Esgrimió que la aseguradora en cuestión no demostró que sufrió algún perjuicio por no haberse agotado el trámite que disponía la Póliza para reclamar daños. Además, alegó que habían pasado dieciocho (18) meses desde la notificación de la reclamación y la presentación de la demanda. Arguyó que la aseguradora tuvo tiempo suficiente para investigar y ajustar la reclamación concernida. Además, expuso que la compañía de seguros publicó un comunicado, en el cual notificaba a sus asegurados que el término para presentar demanda era de un (1) año y este era de caducidad.

---

d.  […]
e.  **enviarnos,** dentro de los sesenta (60) días después de nuestra solicitud, **su prueba de pérdida**, **firmada y jurada**, en que se estipule, según su mejor entender y conocimiento;
    […] (Énfasis Nuestro). Véase Apéndice del *Alegato de la Parte Apelada*, pág. 24.
11. **Demandas Contra Nosotros**. No se podrá presentar una acción a menos que se hayan satisfecho las disposiciones de esta póliza y la acción se inicie dentro de un plazo de un año después de la fecha de la pérdida. *Íd.*, pág. 25.

[8] Véase Apéndice de la *Apelación,* págs. 60- 61.
[9] *Íd.,* págs. 62- 69.
[10] *Íd.*, págs. 72- 77.

El mismo día, el tribunal de instancia decretó la *Sentencia* apelada. En esta, razonó que, de las alegaciones de la demanda, no surgían hechos demostrativos de incumplimiento contractual por parte de **MAPFRE PANAMERICAN** con los términos de la Póliza. Particularmente, resolvió que:

> De las alegaciones bien hechas de la demanda solo surge que, luego del paso del Huracán María el 20 de septiembre de 2017, la parte demandante presentó una demanda (reclamación) bajo la Póliza. No surge de la demanda hecho demostrativo alguno que tienda establecer que la parte demandante puso en posición a Mapfre de considerar y ajustar su pérdida. Tampoco surge de la demanda alegaciones de tiempo y lugar relacionadas a la fecha en que se inició la reclamación, el cumplimiento con la prueba de pérdida, mantener inventario, ni de haber sostenido alguna comunicación con MAPFRE con relación a la pérdida, al ajuste o al pago que se alega debió haberse realizado por la aseguradora.[11]

De este modo, el tribunal *a quo* concluyó que estaba impedido de adjudicar la controversia sobre incumplimiento y cobro de dinero debido que, no surgía de la demanda hechos demostrativos del alegado incumplimiento por parte de **MAPFRE PANAMERICAN**, ni del cumplimiento de la señora **Guardarrama Suárez** con las disposiciones de la Póliza concernida. También determinó que la causa de acción de daños de naturaleza extracontractual era improcedente.

El 3 de agosto de 2020, la señora **Guardarrama Suárez** presentó una *Solicitud de Enmiendas y Determinaciones Adicionales;* y *Solicitud de Reconsideración.*[12] Mediante éstas, reiteró lo alegado en su *Escrito en Cumplimiento de Orden* previamente reseñado.

El 22 de septiembre de 2020, **MAPFRE PANAMERICAN** presentó su *Réplica a "Moción en Solicitud para que se Dicte Orden Adjudicando y Declarando con Lugar Moción de Reconsideración sin Oposición" y en Oposición a Reconsideración (Entrada no. 54).*[13] Adujo que la señora **Guardarrama Suárez** incumplió con sus obligaciones dentro de la relación contractual entre las partes. Enumeró las gestiones que ésta debió realizar al momento de reclamar los daños ante la aseguradora aludida; "i) responder a un aviso de pérdida por parte del asegurado; ii) investigar la reclamación; iii)

---

[11] Véase Apéndice de la *Apelación,* pág. 82.
[12] *Íd.*, págs. 84- 90 y 92- 102.
[13] *Íd.*, págs. 111- 113.

determinar los daños reclamados y estimar los mismos; iv) ajustar los daños; y v) actuar de conformidad con el ajuste, es decir, pagar o denegar.[14] Argumentó que la señora **Guardarrama Suárez**, en sus escritos posteriores a la demanda, admitió que nunca presentó una reclamación inicial en **MAPFRE PANAMERICAN** previo a incoar la demanda.

Unos días después, el 24 de septiembre de 2020, se emitió *Orden* en la cual expresa: "A la solicitud de Reconsideración presentada por la parte demandante, no ha lugar".[15]

El 26 de octubre de 2020, la señora **Guardarrama Suárez** instó una *Apelación.* Entonces, el 30 de octubre de 2020, un foro hermano dictaminó *Sentencia* en la cual determinó que la *Solicitud de Enmiendas y Determinaciones Adicionales* no fue resuelta por el tribunal de instancia por lo que, el recurso fue presentado prematuramente y procedía la desestimación.[16]

En consecuencia, el 29 de agosto de 2022, **MAPFRE PANAMERICAN** presentó una *Oposición a las Solicitudes de Reconsideración y de Determinaciones de Hechos Adicionales.*[17] Adujo que la señora **Guardarrama Suárez** no le permitió a la compañía aseguradora realizar una investigación, efectuar un ajuste y resolver la reclamación.

Posteriormente, el 26 de septiembre de 2022, el foro primario dictó *Resolución*, mediante la cual enunció, lo siguiente: "A la Solicitud de Enmiendas y Determinaciones Adicionales, No Ha Lugar".[18]

Inconforme, el 24 de octubre de 2022, la señora **Guardarrama** incoó ante este Tribunal de Apelaciones un escrito intitulado *Apelación.* En su recurso, señala el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia al desestimar con perjuicio la Demanda y no tomar medidas menos drásticas, en protección de la parte asegurada en un caso de alto interés público, obviando las circunstancias presentes tras el paso de los Huracanes Irma y María y que la aseguradora no ha demostrado haber sufrido perjuicio sustancial alguno.

---

[14] *Íd.*, pág. 112.
[15] Véase Apéndice de la *Apelación,* pág. 114.
[16] *Íd.*, págs. 117- 131.
[17] *Íd.,* págs. 170-186.
[18] *Íd.,* pág. 221.

Erró el Tribunal de Primera Instancia al desestimar la Demanda cuando a tenor con el Artículo 11.190 del Código de Seguros cualquier condición, estipulación o convenio para privar a los Tribunales de Puerto Rico de jurisdicción en acciones contra el asegurador se considera nulo.

Erró el Tribunal de Primera Instancia al desestimar la Demanda cuando a tenor con el Artículo 11.190 (4)(5) y el Artículo 27.150 del Código de Seguros el emplazamiento y la demanda constituyen una notificación de la reclamación a la aseguradora, quien debió cumplir con los deberes y obligaciones bajo la póliza, el Código de Seguros y su Reglamento y actuar acorde con la buena fe extrema requerida en este contexto.

El 26 de octubre de 2022, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo perentorio de (30) días para presentar alegato en oposición. El 2 de diciembre de 2022, **MAPFRE PANAMERICAN** presentó su *Alegato de la Parte Apelada.*

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, exponemos las normas de derecho pertinentes a la(s) controversia(s) planteada(s) a los fines de adjudicar.

## II.

## A.

La Regla 10.2 de las de Procedimiento Civil de 2009 permite a la parte demandada solicitar la desestimación de la demanda, entre otras instancias, cuando el tribunal carece de jurisdicción sobre la materia, o cuando las alegaciones hechas por la parte demandante son insuficientes para establecer una reclamación que justifique la concesión de un remedio.[19] Al interpelar la desestimación bajo este último fundamento la parte promovente tiene que demostrar que, aun asumiendo que las alegaciones de la demanda son ciertas, no procede conceder el remedio solicitado por la parte demandante.[20]

Esto es, el estándar adjudicativo al evaluar una moción de desestimación exige que los tribunales tomen como ciertos "todos los hechos bien alegados de la demanda y que hayan sido aseverados de manera clara

---

[19] 32 LPRA Ap. V., R.10.2.
[20] *Casillas Carrasquillo v. Estado Libre Asociado de Puerto Rico*, 209 DPR 240, 247 (2022).

y concluyente".[21] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[22]

Como parte de este estándar adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[23] Luego, solo procederá una moción de desestimación cuando la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[24]

En conclusión, el criterio al adjudicar esta moción de desestimación no es si la parte demandante va a prevalecer finalmente, sino si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados de la demanda.[25] Empero, cuando en la moción de desestimación se exponen materias no contenidas en la demanda, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria, y estará sujeta a todos los trámites aplicables.[26] La misma norma aplica cuando en el escrito de oposición a la solicitud de desestimación se presentan materias extrañas, no incluidas en la demanda.[27]

Debe tenerse presente que en nuestra jurisdicción impera "una clara política pública judicial de que los casos se ventilen en sus méritos".[28] La desestimación conlleva "el efecto de privar a un ciudadano de la función

---

[21] *González Méndez v. Acción Social de PR,* 196 DPR 213, 234 (2016).

[22] José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, págs. 272. Citado en *Asociación Puertorriqueña de Importadores de Cerveza, Inc. v. ELA,* 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad).

[23] *González Méndez v. Acción Social de PR, supra,* págs. 234-235.

[24] *Ortiz Matías v. Mora Development Corp.,* 187 DPR 649, 654 (2013).

[25] José A. Cuevas Segarra, *op. cit.,* pág. 530

[26] Regla 10.2 de Procedimiento Civil, *supra.*

[27] En la esfera federal, la norma equivalente a nuestra Regla 10.2 se ha interpretado como:
  *A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials. Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir. 1996).

[28] *Sierra Quiñones v. Rodríguez Luciano,* 163 DPR 738, 745 (2005).

judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar".[29] Justamente por razón de la política judicial de que los casos se resuelvan en sus méritos, **"[n]o procede la desestimación definitiva de una demanda por dejar de exponer la misma hechos que justifiquen la concesión de un remedio si dicha demanda es susceptible de ser enmendada".[30]** Dicho de otro modo, "[u]na demanda debe desestimarse en definitiva porque no aduce causa de acción sólo cuando la razón de pedir no procede bajo supuesto alguno de derecho concebible, y por lo tanto, la misma no es susceptible de ser enmendada".[31]

**B.**

El Derecho Civil puertorriqueño instituía en el derogado Código Civil de 1930, la figura jurídica de las obligaciones.[32] Las obligaciones constituidas entre dos (2) partes pueden consistir en "dar, hacer o no hacer alguna cosa".[33] Las obligaciones surgen de "la ley, los contratos, y cuasicontratos y de los actos u omisiones ilícitas en las que intervenga culpa o negligencia".[34]

Por su parte, los contratos son negocios jurídicos bilaterales y en nuestro ordenamiento jurídico, constituyen una de las varias formas en que las personas pueden obligarse entre sí.[35] Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos.[36] De conformidad con el principio rector de *pacta sunt servanda*, las partes contratantes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público. En virtud

---

[29] *Sierra Quiñones v. Rodríguez Luciano, supra* pág. 746.
[30] *Clemente González v. Departamento de la Vivienda,* 114 DPR 763, 771 (1983) (énfasis suplido). En este caso, la parte demandada había solicitado la desestimación antes de presentar su contestación a la demanda. El tribunal concedió la desestimación por dejar de exponer la demanda hechos que justificaran la concesión de un remedio. Al revocar al foro primario, el Tribunal Supremo decretó que no procede la desestimación si la demanda es susceptible de ser enmendada, y añadió que "[n]o habiéndose radicado la contestación a la demanda, al amparo de las disposiciones de la Regla 13.1 […], la parte recurrente, como cuestión de derecho, puede enmendar la misma".
[31] *Figueroa v. Tribunal Superior,* 88 DPR 122, 124 (1963).
[32] El *Código Civil de Puerto Rico de 1930,* fue derogado y sustituido por el *Código Civil de Puerto Rico de 2020,* conocido como la Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos que originan la presente controversia surgen durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.
[33] Art. 1041 del Código Civil, 31 LPRA sec. 2991.
[34] Art. 1042 del Código Civil, 31 LPRA sec. 2992.
[35] *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo*, 150 DPR 571, 581 (2000).
[36] Art. 1044 del Código Civil, 31 LPRA sec. 2994. *Asoc. Res. Los Versalles v. Los Versailles*, 194 DPR 258, 266-267 (2015).

de lo anterior, se dispone que, desde el momento de su perfeccionamiento, los contratos obligan no sólo al cumplimiento de lo expresamente pactado, sino a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley.[37]

Un contrato existe o se perfecciona desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio.[38] Para obligarse, las partes deben cumplir con los siguientes requisitos: consentimiento de los contratantes, objeto cierto que sea materia del contrato y causa de la obligación que se establezca.[39] Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios para las partes.[40]

El consentimiento en los contratos se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que constituyen el objeto del acuerdo.[41] La validez del consentimiento y del contrato se presume.[42] Por consiguiente, y a tales efectos, "[l]os contratos serán obligatorios, cualquiera sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez".[43]

Con relación al incumplimiento contractual, el Artículo 1054 de nuestro Código Civil de 1930 dispone que "[q]uedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia, morosidad, y los que de cualquier modo contravinieren a tenor de aquellas".[44] Nuestro Más Alto Foro ha definido el aludido término como: "el quebrantamiento de un deber que surge de un contrato expreso o implícito".[45] Además, surge una causa de acción cuando una parte contratante produce daños a la otra.[46]

---

[37] Art. 1210 del Código Civil, 31 LPRA sec. 3375; *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 727 (2018).
[38] Art. 1206 del Código Civil, 31 LPRA sec. 3371.
[39] Art. 1213 del Código Civil, 31 LPRA sec. 3391.
[40] Art. 1230 del Código Civil, 31 LPRA sec. 3451.
[41] Art. 1214 del Código Civil, 31 LPRA sec. 3401.
[42] *Unisys Puerto Rico, Inc. v. Ramallo Brother Printing, Inc.*, 128 DPR 842, 853 (1991).
[43] Art. 1230 del Código Civil, *supra*.
[44] 31 LPRA sec. 3018.
[45] *Rivera Sanfeliz v. Jta. Dir. First Bank*, 193 DPR 38, 57 (2015).
[46] *Sociedad Legal de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998).

Es norma reiterada que el dolo contractual se debe al incumplimiento de lo pactado por una de las partes contratantes de manera voluntaria y con pleno conocimiento de su quebrantamiento.[47] De esta manera, [e]n caso de dolo responderá el deudor de todos los daños que conocidamente se derivan de la falta de cumplimiento de la obligación".[48]

**C.**

En nuestro ordenamiento jurídico, el negocio de seguros está investido de un alto interés público, debido a que está llamado a proteger los riesgos que amenazan la vida o el patrimonio de los ciudadanos.[49] Por ello es una industria que está altamente reglamentada por el Estado, mediante el *Código de Seguros de Puerto Rico* (*Código de Seguros*), conocida como la Ley Núm. 77 de 19 de junio de 1957, según enmendada.[50]

El *Código de Seguros* define el contrato de seguro como aquel que tiene el propósito de que una persona indemnice, pague o provea un beneficio específico o determinable a otra en caso de producirse un evento incierto previsto en el mismo.[51] Es decir, su objetivo es transferir a la aseguradora los riesgos y proteger al asegurado si ocurre un suceso especificado en el contrato.[52] Este tipo de negociación requiere un grado extremo de buena fe precedente a la consumación de dicho contrato.[53]

En conformidad con el *Código de Seguros*, la póliza se describe como el instrumento escrito en que se expresa un contrato de seguro.[54] En otras palabras, los términos que configuran este tipo de acuerdo están expresados en dicho documento.[55]

En cuanto a la interpretación de las cláusulas contenidas en una cubierta, el *Código de Seguros* dispone que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado,

---

[47] *Consejo Titulares v. MAPFRE*, 208 DPR 761, 777 (2022).
[48] Art. 1060 del Código Civil, 31 LPRA sec. 3024.
[49] *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 897 (2012).
[50] 26 LPRA sec. 101, *et seq*.
[51] 26 LPRA sec. 102.
[52] *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 148-149 (2021).
[53] *Feliciano Aguayo v. MAPFRE*, *supra*.
[54] 26 LPRA sec. 1114(1).
[55] *Íd.*

extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[56] Dichas disposiciones se examinan desde la óptica de una persona normal de inteligencia promedio para garantizar que el asegurado reconozca el alcance de la protección del producto que ha comprado.[57]

En reiteradas ocasiones, nuestro Tribunal Supremo ha resuelto que "…debido a que el contrato de seguro es un contrato de adhesión, redactado en su totalidad por el asegurador, las cláusulas dudosas o ambiguas deberán interpretarse liberalmente en beneficio del asegurado para cumplir así el designio intrínseco de la póliza, que es dar protección al asegurado".[58]

No obstante, es necesario examinar si existen cláusulas de exclusión, mediante las cuales el asegurador exceptúa determinados eventos, riesgos o peligros de la cubierta.[59] Como regla general, las exclusiones en este tipo de contrato son desfavorecidas, por lo cual, deben interpretarse restrictivamente en contra de la aseguradora y así resguardar el propósito principal del seguro que es la protección mayor al asegurado.[60] Ahora bien, si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podrá responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados (citas omitidas).[61]

En relación a la controversia que nos atañe, el Art. 11.190 del *Código de Seguros* fija las limitaciones de acciones sobre la póliza, y particularmente expresa:

> (1) Ninguna póliza entregada o expedida para entrega en Puerto Rico, que cubra un objeto de seguro residente, localizado o a ejecutarse en Puerto Rico, contendrá ninguna condición, estipulación o acuerdo:
>> (a) Para privar al asegurado del derecho de recurrir a los tribunales, **en caso de controversia**, para la determinación de sus derechos con arreglo a la póliza.
>> (b) Para privar a los tribunales de Puerto Rico de jurisdicción en acciones contra el asegurador.
>> (c) Para limitar el derecho de entablar acción contra el asegurador a un período menor de un año desde la fecha en que surja causa de acción en relación con todo seguro

---

[56] 26 LPRA sec. 1125.
[57] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1020 (2020), citando *SLG Ortiz-Alvarado v. Great American,* 182 DPR 48 (2011).
[58] *Íd.*, a la pág. 1021.
[59] *Íd.*
[60] *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 899.
[61] *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1021 (citando a *Viruet et al. v. SLG Casiano-Reyes,* 194 DPR 271, 279 (2015)).

que no sea seguro de propiedad, seguro contra siniestros marítimos y seguro de transporte; en las pólizas de seguro de propiedad, contra siniestros marítimos y de transporte, tal derecho no podrá limitarse a un período menor de un año desde la fecha en que ocurra el suceso que resulte en la pérdida.

(d) […].

(2) Cualquier cláusula o estipulación en un contrato o póliza de seguro que establezca condiciones al asegurado para entablar una acción judicial contra el asegurador para hacer valer sus derechos bajo la póliza en los tribunales, para limitar el período de tiempo para hacerlo por un término menor de un (1) año, será nula, sin que tal nulidad afecte la validez de las demás disposiciones de la póliza o contrato.

(3) Siempre que no suplante o constituya una renuncia del derecho del asegurado a iniciar una acción judicial en los tribunales, se considerará válida una estipulación o cláusula de valoración "appraisal" contenida en pólizas de seguros de propiedad en la línea comercial o personal, que disponga que cualquiera de las partes podrá solicitar por escrito someter ante un árbitro imparcial y competente la resolución de disputas, en torno a la valoración de daños o pérdida en una reclamación en que el asegurador haya aceptado que está cubierta.

[…].

(4) Para propósitos de una acción directa por un dueño de propiedad para recuperar daños bajo una póliza de seguro, una notificación de reclamación a la compañía de seguro o su representante autorizado o su agente general autorizado constituye una reclamación extrajudicial que interrumpe la prescripción de las acciones conforme al Artículo 1873 del Código Civil de Puerto Rico, incluso cuando la reclamación sea a consecuencia del impacto de los huracanes Irma y/o María del pasado mes de septiembre de 2017.

(5) Para propósitos de una acción directa por un dueño de propiedad para recuperar daños bajo una póliza de seguro, la aceptación de una notificación de reclamación de seguro por la compañía de seguro o su representante autorizado o su agente general autorizado constituye un reconocimiento que interrumpe la prescripción de las acciones conforme al Artículo 1873 del Código Civil de Puerto Rico, incluso cuando la reclamación sea a consecuencia del impacto de los huracanes Irma y/o María del pasado mes de septiembre de 2017.

(6) La limitación del término de tiempo para presentar una demanda o buscar amparo del tribunal o de un proceso administrativo, impuesto por una póliza de seguro, está sujeto a ser interrumpido por notificación extrajudicial, conforme al Artículo 1873 del Código Civil de Puerto Rico. Cualquier pacto en lo contrario será nulo, incluso cuando la reclamación sea a consecuencia del impacto de los huracanes Irma y/o María del pasado mes de septiembre de 2017.

(7) Las demás reclamaciones se regirán por las disposiciones del Artículo 27.164.[62] (Énfasis Nuestro).

Respecto a la notificación de una reclamación al asegurador, el Artículo 27.150 expone:

Todo asegurador, luego de notificársele una reclamación, deberá acusar recibo de la misma, dentro de los próximos quince (15) días de habérsele notificado la misma. La notificación hecha a una de las personas autorizadas por el asegurador, para recibir reclamaciones en su nombre, se

---

[62] 26 LPRA sec. 1119.

considerará como hecha a este último, siempre que la autorización o el acuerdo este vigente y no se haya revocado. Toda persona que no esté autorizada a recibir las mismas vendrá obligada a notificar, dentro de los siguientes siete (7) días, ese hecho al reclamante y deberá indicar a quién debe hacerse la notificación junto con la dirección de esta persona. La violación de este artículo podrá ser sancionado con una multa administrativa conforme se dispone en el Artículo 27.260 de este capítulo.[63]

**III.**

Por estar íntimamente relacionados todos los señalamientos de error, procedemos a discutirlos en conjunto. En su *Apelación*, la señora **Guardarrama Suárez** alega que el tribunal de instancia erró al tomar la drástica decisión de desestimarle su demanda, toda vez que la aseguradora no demostró haber sufrido un perjuicio sustancial. Argumenta, además, que las cláusulas de la póliza concernida son nulas y contrarias al Artículo 11.190 del *Código de Seguros* toda vez que exigen el cumplimiento de condiciones como pre-requisito para acudir ante el tribunal. Asimismo, arguye que las referidas cláusulas limitan y condicionan el derecho del asegurado a ventilar su reclamación ante dicho foro. Del mismo modo, expone que una notificación de reclamación a la compañía de seguro o a su representante autorizado constituye una reclamación extrajudicial que interrumpe la prescripción. Razona que, al incoar la demanda, le dio a **MAPFRE PANAMERICAN** la oportunidad de investigar, y ajustar el caso, según corresponda, así como aplicar las cláusulas de la póliza en cuestión. Arguye que la aludida aseguradora debió cumplir con los deberes y obligaciones de conformidad con el contrato, el *Código de Seguros*, su Reglamento y actuar acorde a la buena fe extrema requerida en este contexto.

Por su parte, **MAPFRE PANAMERICAN** aduce que todas las alegaciones de la señora **Guardarrama Suárez** son infundadas, toda vez que no hubo una reclamación presentada **previo** a instar su demanda. Por ello, esgrime que no hubo una negación de la cubierta o de pago, menos un incumplimiento de contrato. A su vez, expone que la señora **Guardarrama Suárez** incumplió con su obligación de notificar a la aseguradora su pérdida y ponerle en condiciones para realizar el ajuste, bajo las condiciones de la

---

[63] 26 LPRA sec. 2714a.

póliza. Argumenta que de dicho escrito no surgen hechos demostrativos que hagan alusión a fecha alguna de reclamación previa. Esto es, al así hacerlo la señora **Guardarrama Suárez** falló en cumplir con el contrato suscrito entre las partes e impidió que la aseguradora cumpliera con su deber, pues esta optó por la vía judicial sin haber cumplido con los trámites extrajudiciales requeridos bajo la póliza.

Tras un análisis ponderado del expediente ante nos y del derecho aplicable, concluimos que las alegaciones de la demanda versan sobre un incumplimiento contractual por parte de **MAPFRE PANAMERICAN**, cuando es evidente que la aludida aseguradora no tuvo la oportunidad de investigar y adjudicar la alegada pérdida de la señora **Guardarrama Suárez** previo a la radicación de la demanda. Por lo tanto, resolvemos que la aseguradora concernida no incurrió en incumplimiento alguno y fue la actuación de la señora **Guardarrama Suárez**, la cual constituyó una violación a los términos de la póliza suscrita entre las partes.[64]

Según pormenorizamos, el inciso (4) del Art. 11.190 del *Código de Seguros* claramente se refiere a una notificación de reclamación que el asegurado hace **directamente** a la compañía de seguro, lo cual constituye una reclamación extrajudicial que interrumpe el término prescriptivo. Reiteramos que, en este caso, la señora **Guardarrama Suárez** no cumplió con este primer paso. Por consiguiente, la demanda presentada por esta no configuró una notificación, de conformidad con la citada disposición legal.

Del mismo modo, el inciso (5) del Art. 11.190 del *Código de Seguros* alude a las circunstancias en que la aseguradora haya aceptado que recibió una reclamación para que dicha aceptación interrumpa el término prescriptivo. A la luz de los hechos del presente caso, es evidente que la señora **Guardarrama Suárez** no reclamó extrajudicialmente su pérdida directamente a **MAPFRE PANAMERICAN**, por lo que no hubo una aceptación de notificación de parte de la aseguradora.

---

[64] El Artículo 11.190 inciso (1)(a) del *Código de Seguros* se refiere a controversias que surjan sobre la interpretación del contenido de la póliza o reclamos de conformidad con ésta. En el presente caso, no existe controversia resultante de alguna reclamación. Ello pues, la señora **Guardarrama Suárez** no hizo una reclamación previa y directamente a la compañía de seguros en cuestión antes de recurrir al foro judicial con su demanda.

En resumen, resulta forzoso colegir que la señora **Guardarrama Suárez** no podía exigir el cumplimiento de la póliza de seguro por parte de **MAPFRE PANAMERICAN**, toda vez que incumplió con los términos y condiciones establecidos en dicho convenio. Ello, impidió que la aludida aseguradora también cumpliera a cabalidad con su obligación. Por lo tanto, ante la ausencia de error, arbitrariedad o capricho por parte del foro primario, determinamos que no erró al desestimar, con perjuicio, la demanda entablada por la señora **Guardarrama Suárez**.

**IV.**

Por los fundamentos anteriormente expuestos, ***confirmamos*** la *Sentencia* dictaminada el 15 de julio de 2020 por el Tribunal de Primera Instancia, Sala Superior de Caguas.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones